THE STATE ex rel. EDWARD S. JONES, Prosecuting Attorney, Plaintiff in Error, v. CHARITON DRAINAGE DISTRICT NO. ONE et al.

In Banc, July 10, 1913.

1. **DRAINAGE DISTRICT: Bridges.** The statute (Sec. 5503, R. S. 1909), authorizing the board of supervisors of a drainage district, "whenever necessary, at the expense of the district," to "construct a convenient roadway or crossing over and across any levee or embankment in said district," does not give the board authority to construct a bridge across a ditch or canal which crosses an established public road.

2. ——: ——: **Sec. 5511.** Neither does Sec. 5511, which requires the board of engineers to "report the location of any and all public highways which may be crossed by the right of way of any ditch, levee or other improvement planned for said district, together with the estimated cost of bridges and approaches across said highways and made necessary by reason of the aforesaid improvements and drainage," authorize the board of supervisors to construct a bridge over a canal that crosses an established public road.

3. ——: ——: **Other Statutes.** Neither do the other statutes which speak of public roads crossing ditches or canals, and provide for the assessment of the benefits and damages that will be done to the various properties within the district by the improvements, and for the collection of the benefits assessed and the payment of the damages done, compel or authorize the district or board to pay the cost of a bridge over a canal or ditch that crosses an established public road, or over any other canal.

4. ——: ——: **Must Be Built or Costs Paid by County.** The Legislature in plain, unambiguous and positive language has provided, in Sec. 5513, R. S. 1909, that when a bridge, in the opinion of the board of engineers of a drainage district, is necessary to be constructed in a public highway across a ditch or canal constructed by the drainage district, the said bridge shall be built by and at the expense of the county, and that if the county neglects or refuses to construct it within the time authorized by the statute the drainage district may build it and recover the costs thereof from the county.

5. ——: ——: **Section 5513 an Exception to Art. 3, Chap. 102.** Section 5513, applying specially to those bridges which

State ex rel. v. Drainage District.

the board of engineers finds are necessary to be constructed in public highways crossed by ditches or canals of the drainage district, and directing by whom such bridges are to be built and paid for, is an exception to article 3 of chapter 102, which is general in its terms, and governs the construction of bridges generally throughout the county, as well as the expenditure of the revenues therefor. These statutes are *in pari materia*, and said Sec. 5513, though an exception to the general provisions of the article, is not in conflict therewith, the section prescribing the methods and means of constructing a bridge over a drainage ditch, and the article those of other bridges.

6. ————: ————: Constitutionality: Lending Credit to Corporation, etc. The statute (Sec. 5513, R. S. 1909), requiring the county to build a bridge in a public highway crossed by a ditch of a drainage district, or to pay the costs thereof when, upon its neglect to do so, the drainage district builds it, is not violative of section 45 of article 4 of the Constitution, which prohibits the General Assembly from enacting any law lending the credit or aid of the State to any person, association or corporation, public or private; nor of section 46, prohibiting the General Assembly from making any grant of public money or property to any such person or corporation; nor of section 47, prohibiting the General Assembly from aiding in a financial way, and from granting any money or thing of value to, any such person or corporation. The bridge is not the property of the district or of its citizens, but belongs to the county and will be used by the entire public.

7. ————: ————: ————: Extinguishing Indebtedness. Nor does such statute violate section 51 of article 4 of the Constitution, prohibiting the General Assembly from releasing, extinguishing, or authorizing the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any corporation or individual. No obligation or liability rests upon a drainage district to construct a bridge over a ditch that crosses a public road. The law simply designates the board of engineers, instead of the county surveyor, as the officer to locate the bridge and draw the plans and specifications, but, nevertheless, imposes the burden of building the bridge on the county.

8. ————: ————: ————: Subscribing to Stock. Nor is such statute violative of section 6 of article 9 of the Constitution, prohibiting any county from subscribing to the capital stock of any railroad or other corporation or association, and from making donations thereto. The bridge in a public road across a drainage ditch, if built or paid for by the county, will not belong to the drainage district, but to the county.

9. ———: ———: ———: Imposing Tax on County. Nor is said statute violative of section 10 of article 10, which prohibits the General Assembly from imposing any tax upon counties, cities, towns or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town or other municipal purpose. The statute in requiring the county to pay for a bridge in a public road over a drainage ditch does not impose any tax on any one; the money to pay for the bridge comes from the same source from which the money for constructing other public bridges comes, whether it is built according to the plans and specifications of the board of engineers of the drainage district, or according to those of the county surveyor.

Error to Macon Circuit Court.—*Hon. Nat M. Shelton,* Judge.

AFFIRMED.

*Ed S. Jones* and *George N. Davis* for plaintiff in error.

(1) Full and complete power and authority is expressly conferred by law upon Chariton Drainage District No. 1 and the board of commissioners thereof to construct and maintain a bridge at the place described in plaintiff's petition. Sec. 5511, R. S. 1909; Laws 1911, p. 211; Secs. 5516, 5519, 5526, 5503, 5505, R. S. 1909. In other States similar statutes have been construed to mean that roads and highways must be assessed according to damage and benefits the same as other property in the district. Spring Creek Drainage Dist. v. Elgin, 249 Ill. 260. And in such jurisdictions, as well as in jurisdictions where the law is silent on assessing public roads, according to damages and benefits, it is uniformly held that the district must build the bridges. Commissioners v. Drainage District, 246 Ill. 388; People v. Drainage District, 231 Ill. 435; Railroad v. Board of Supervisors, 116 N. W. (Iowa) 805; State ex rel. v. Henry County, 157 Ind. 96. And no express statute is necessary to compel a drainage district which runs its ditch across a highway to restore the same. People v. Fenton & T. R.

Co., 96 N. E. (Ill.) 864.; State v. Drainage District, 132 N. W. (Neb.), 398; Conewango v. Shaw, 52 N. Y. 327. (2) Chap. 102, R. S. 1909, in conjunction with article 10, section 22, of the Constitution, provides a complete scheme for the building of bridges, repairing of roads and the collection of taxes therefor, and gives to the authorities of the county and particularly to the county court, absolute discretion as to when and where county revenue shall be expended for bridges, and absolute authority to prescribe specifications for the same. The defendants in error seek by implication and construction to upset all of these laws and deprive the county court and county authorities of this absolute discretion expressly given to them by law. Jefferson County v. St. Louis County, 113 Mo. 619; State ex rel. v. Thomas, 183 Mo. 220. (3) Should the court construe article 1, chapter 41, to mean that the county must bridge the highway where the same has been obstructed by the drainage ditch or that the drainage district has the right to build the bridges and sue the county and collect the amount spent for such purposes it would bring all of the sections cited above into direct conflict with the laws of the State regarding the collection of taxes and the disbursements thereof including road taxes, bridge taxes, etc., and in conflict with the laws of Missouri with regard to bridges which gives the county the absolute discretion to decide whether or not a bridge shall be built, and, if built, the cost, size and character thereof, as well as in conflict with the spirit and letter of the Constitution of the State as hereinafter set out. Such a construction would bring the drainage laws in conflict with sections 45, 46 and 47 of article 4. State v. Curators, 57 Mo. 178; State ex rel. v. Walker, 85 Mo. 41; State ex rel. v. County Court, 128 Mo. 427; Elting v. Hickman, 172 Mo. 237; State ex rel. v. County Court, 142 Mo. 575; Webb v. Lafayette County, 67 Mo. 353; Deal v. Mississippi County, 107 Mo. 467; State ex rel. v. Ziegenhein,

144 Mo. 283; State ex rel. v. St. Louis, 174 Mo. 125; Haeussler v. St. Louis, 205 Mo. 656; State ex rel. v. St. Louis, 216 Mo. 47; Morgan v. Schusselle, 228 Ill. 106. Also in conflict with section 51 of article 4 of the Constitution which provides that the General Assembly shall have no power to release or extinguish or authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any corporation or individual to this State, or to any county or other municipal corporation therein. And also would be in conflict with section 6 of article 9 of the Constitution. State ex rel. v. City of St. Louis, 216 Mo. 47; Haeussler v. St. Louis, 205 Mo. 656. Also in conflict with section 1 of article 10 and section 3 of article 10. State ex rel. v. Ashbrook, 154 Mo. 375; Brooks v. Schultz, 178 Mo. 222; State ex rel. v. Owsley, 122 Mo. 68; Ex parte Loring, 178 Mo. 194. Also in conflict with section 10 of article 10 of the Constitution. State ex rel. v. Ashbrook, 154 Mo. 375. Taxes should be disbursed only by public officers. Muncipalities are only authorized to collect taxes for municipal purposes, controlled only by municipal officers, and not by private individuals. State ex rel. v. St. Louis, 216 Mo. 47; State ex rel. v. Edwards, 42 Mont. 135; People v. Hurlbut, 24 Mich. 44; People v. Detroit, 28 Mich. 228; Blades v. Commissioners, 122 Mich. 366; State v. Barker, 116 Iowa, 96.

*B. R. Dysart* and *Walter C. Goodson* for defendants in error.

(1) The Drainage Act, chap. 41, R. S. 1909, provides that the bridge over the ditch where it crosses the public highway shall be built by the county. (2) The only sections in the drainage act concerning bridges, are sections 5503 and 5513. There can be no room for construction of section 5513; it is a positive requirement by the Legislature. It is made primarily

the duty of the county to build the bridge. If the county fails to build the bridge, after notice of its necessity, then the drainage district is authorized to let the work of constructing the bridge at the expense of the county, which cost should be collected by the board of supervisors from the county, if such suit be necessary. It is further provided in section 5513 that, before the supervisors should let such work, the county was entitled to notice of the time and place of letting such work and making such contract therefor. The contention of the plaintiff in error that a public highway is not a public road, and that the county of Macon is not a corporation in the meaning of section 5513, is without merit. St. Louis v. Terminal Ry. Assn., 211 Mo. 386. (3) The several drainage acts of the State of Missouri have recently been before this court, where the same, and the various provisions thereof, have been assailed on the grounds of their unconstitutionality, and they have invariably been held to be constitutional. Drainage District v. Railroad, 236 Mo. 94; Drainage District v. Turney, 235 Mo. 80; State ex rel. v. Taylor, 224 Mo. 393; Morrison v. Morey, 146 Mo. 561. (4) The contention of the plaintiff in error that the county court has conclusive discretion as to the character and size of a bridge to be built, and that the decision and report of the chief engineer of the drainage district supersedes and interferes with the discretion of the county court, is without merit. It is not true that the county court has this discretion. On the contrary, the county court has an engineer, the same as the drainage district. R. S. 1909, secs. 10487, 10490, 10491, 10496. (5) The Legislature in its sovereign capacity had the power to make all the expenses of the drainage district payable out of the common fund of the county. The Legislature also had the power to require all the expenses of the drainage district to be paid by the inhabitants and property within the bounds of the drainage district.

In this case, the Legislature saw fit to divide these expenses, and require the drainage district to pay all the expenses, except where a bridge was required at the crossing of a public road. This latter expense, the Legislature in its discretion, cast upon the county. The Legislature has power to levy and collect taxes directly, and it also has power to delegate this function to others, such as counties and drainage districts, townships and school districts. Heffner v. Cass and Morgan Counties, 193 Ill. 439, 58 L. R. A. 353; State v. Drainage Dist., 132 N. W. (Neb.) 398. (6) It is well settled that in all improvements in a city, the cost of such improvements may by law be cast upon the city, or may be assessed against the adjoining proprietors to said streets and improvements, or the same may be divided, a part to be paid by the city, and a part by the adjoining owners. It was competent for the Legislature to cast the burden of building the bridge at the crossing upon the county. Railroad v. Illinois ex rel. 200 U. S. 561.

WOODSON, J.—This is an equitable proceeding instituted by the State, at the relation of the prosecuting attorney of Macon county, against Chariton Drainage District No. 1 et al., seeking a mandatory injunction against the defendants, enjoining an obstruction in a public road, in said county, and requiring the defendants to construct a bridge across the drainage ditch of defendant company where it crosses said public road.

Since the case below passed off on a demurrer to the petition, it becomes necessary to set it out in the statement of the case. It is as follows:

"Be it remembered that Ed S. Jones, prosecuting attorney for Macon county, Missouri, who in this behalf prosecutes for the State of Missouri, comes now and gives the court here to understand and be in-

formed that the defendant, the Chariton Drainage District No. One, is a public corporation, created, organized and existing under and by virtue of the laws of the State of Missouri, and incorporated by a decree of the circuit court of Macon county entered of record on the —— day of 1904, for the purpose of reclaiming and protecting from the effects of water, by drainage or otherwise, swamp and overflow lands in said drainage district and that all or more than one-half of the lands of said drainage district are situate within the county of Macon and State of Missouri.

"Plaintiff states that the said defendants Grandison Goodson, Robt. H. Kern, David M. Williams, John F. Leffler and J. V. Grove are the duly elected, qualified and acting supervisors of said drainage district.

"Plaintiff further states that at the December term, 1907, of the circuit court of Macon county, Missouri, by a proper decree of said court, said Chariton Drainage District No. One was extended to include what is designated in said decree as the north exten-. sion of Chariton Drainage District No. One and to include among other lands certain lands in sections 8, 9 and 10 in township 58, range 16, in said county.

"Plaintiff states that on the 9th day of May, 1894, by order of record entered in the county court of Macon county, Missouri, a public road was established in said sections 8, 9 and 10 in township 58, range 16 aforesaid, beginning at the municipal township of Valley at the northeast corner of the northwest one-fourth of the southeast one-fourth of section 10, township 58, range 16, at a public road; thence in a west direction, a distance of three-fourths of a mile, to the northwest corner of the southwest quarter of section 10, township 58, range 16; and thence in a west direction the distance of a half mile through the center of section line, township 58, range 16, and thence in a northwest and southwest direction a distance of about two and one-fourth miles to and terminating at a pub-

lic road at the intersection of section 7, township 58, range 16, all in the municipal township of Valley, county of Macon and State of Missouri.

"Plaintiff further states that where said public road crosses the section line between the aforesaid sections 9 and 10 the same was and is sixty feet in width.

"Plaintiff further states that the said public road is a regularly established public highway of Macon county, Missouri, and that the same has been maintained and kept in repair and used as a road and highway by Macon county and the general public from the date of its establishment until the same was unlawfully obstructed and rendered impassable by the said defendants at the time and in the manner hereinafter set forth.

"Plaintiff further states that in the year 1908 the said Chariton Drainage District No. One, through its said board of supervisors, the defendants herein and their predecessors in office, constructed and caused to be constructed and have ever since maintained a drainage canal about forty feet in width and ten feet in depth through and across said public highway in or near the section line between the aforesaid sections 9 and 10 in said township 58, range 16, without constructing a proper and convenient bridge or other means of passage for the public over said ditch and obstruction, made necessary by reason of the aforesaid drainage canal, as the law directs, so that the said drainage canal so constructed and maintained as aforesaid forms an obstruction completely preventing travel upon said road and so occupies and obstructs the whole of said road and highway, and plaintiff further says that said obstruction and canal is dangerous to and completely prevents public travel, as constructed and maintained by defendants, and that the same as constructed and maintained constitutes and

is a public nuisance and that the general public has suffered and will in the future continue to suffer great injury, damage and inconvenience by reason thereof.

"Plaintiff further states that the defendants have been notified of the obstruction herein complained of and of the nuisance herein complained of and requested to abate the same by building a suitable and convenient bridge or passageway over said ditch, but have failed and refused so to do, and plaintiff says if the State of Missouri is denied the standing in court to complain of the public nuisance herein mentioned there is no remedy left, either for the public or for any private individual, by which they can effect the removal of said obstruction and cause the nuisance herein complained of to be abated.

"Plaintiff further states that it has no adequate remedy at law. Wherefore plaintiff prays the court that an order of injunction issue out of this court directed to the said defendants and each of them enjoining and restricting them, their agents, servants and employees from maintaining said obstruction in said road, and that a further mandatory order be directed to the defendants and each of them commanding them to remove said obstruction from the public road and to provide a convenient and necessary passageway and bridge across the same, and to forever cease from doing or permitting any act or thing done which shall interfere with the use of said road as a public highway or with the enjoyment of the same as such by the public at large, and for such other and further relief as to the court shall seem meet and just in the premises, and plaintiff prays for general relief."

The defendants filed the following demurrer to the petition, viz.:

"Now at this day comes the said defendants by their attorneys and demur to the plaintiff's petition filed herein for the following grounds of objection.

"1. Because the said petition fails to state facts sufficient to constitute a cause of action.

"2. Because said petition fails to state facts sufficient to constitute a cause of action to warrant the issue of an injunction against the defendants.

"3. Because on the face of the said petition the plaintiff has an adequate remedy at law."

The demurrer was taken up, and after due consideration, was by the court sustained. To this action of the court, the plaintiff duly objected and preserved its exceptions; and declining to plead further, the court rendered judgment on the pleadings in favor of the defendants.

In due time and in proper manner the relator sued out of this court a writ of error.

For convenience we will designate the plaintiff in error the relator, and the defendants in error the defendants.

I. The position of the relator is well stated in his own language, which is as follows:

"Plaintiff in error and plaintiff in the circuit court of Macon county, Missouri, contends that the fair and reasonable construction of article 1 of chapter 41 requires such bridges to be built by the drainage districts, and that a construction of said provisions that would make the counties liable for such bridges would not only be a strained and unreasonable construction of said article and chapter, but would bring said article and chapter into direct conflict with the general revenue and general road and bridge laws now in force in this State, and in force at the time of the organization of said drainage district, and further that such a construction would be repugnant to and would bring said drainage laws in conflict with sections 45, 46, 47 and 51 of article 4, and section 6 of article 9, and sections 3, and 10 of article 10, of the Constitution of the State of

*Drainage District: Bridges.*

Missouri, as well as in conflict with the spirit of all State constitutions.''

Or more briefly stated, counsel for relator insist: first, that the drainage laws of this State impose upon the drainage districts of the State, the duty, as well as the burdens, of constructing and maintaining all bridges and the approaches thereto rendered necessary to public travel, by reason of their excavations, wherever they cross a public road; and, second, if said laws require the respective counties of the State in which any such ditch or canal exists, to build and maintain said bridges and approaches, then said laws are unconstitutional, null and void.

When we come to discuss the merits of the case, this general division of the legal propositions involved will have to be subdivided into a number of others under appropriate headings.

Upon the contrary, counsel for the defendants contend: first, that chapter 41, Revised Statutes 1909, provides that all such bridges and approaches shall be constructed and maintained by said counties; second, that the relator has an adequate remedy at law, and for that reason the injunction should not be granted; third, that in the sound discretion of the court, the injunction prayed for should be refused; and, fourth, the mandatory injunction should be denied and that the demurrer was properly sustained.

Returning to the first insistence of counsel for relator: Does chapter 41, Revised Statutes 1909, as amended, require the defendants to construct and maintain the bridge and approaches thereto mentioned in the petition?

This question requires at our hands the construction of section 5511, Revised Statutes 1909, as amended by an act approved March 30, 1911, Laws 1911, section 5511, p. 211, and sections 5516, 5519, 5526, 5503 and 5505, Revised Statutes 1909.

For convenience, we will here copy so much of each of said statutes as are material to the questions involved in this case, which are as follows:

Section 5511, as amended in 1911, reads as follows:

"The said 'board of engineers' shall make a complete topographical survey of the said district and submit the same to the board of supervisors with maps and profiles of said survey and a full and complete plan for draining, and reclaiming the lands in said district from the overflow of or damage by water, or floods; and also, the physical characteristics and location of any right of way, roadbed, bridge or bridges and other property or improvements in said district belonging to or under the control of any railroad company; and shall also report the location of any and all public highways which may be crossed by the right of way of any ditch, levee or other improvement planned for said district, together with the estimated cost of bridges and approaches across said highways and made necessary by reason of the aforesaid improvements and drainage."

Section 5516: "The commissioners shall, as soon after their first meeting as possible, go over and inspect and examine the lands in said district, the railroad rights of way, roadbeds, bridges, culverts, depot grounds, grades and all other railroad property in said district; and shall also inspect and examine all other improvements, highways and bridges belonging to any county or corporations and which may be affected by the proposed drainage and reclamation works and improvements, and shall also examine the streams, watercourses, ditches, ponds, lakes and bayous within the district. . . . A majority of said commissioners shall control and decide all questions. They shall assess, as hereinafter directed and according to the rules hereinafter prescribed, the amount of benefits which will accrue to each tract or parcel of lands

and corporate property above named, by virtue of the works and improvements of said drainage district.''

Section 5519 provides for the levy of the taxes necessary and authorized by the statute for the construction of all the improvements authorized to be made.

Section 5526 provides that the board of supervisors of the drainage district shall have charge of the improvements and shall let contracts for having them made, etc.

''Section 5503. All bridges in said district across any drain, ditch, canal or excavation, shall be built according to, and in compliance with the plans, specifications and orders made or approved by the chief engineer of the district. Any owner of land within the district may, at his own expense and in compliance with the terms and provisions of this section, construct a bridge across any drain, ditch, canal or excavation in said district. The board of supervisors shall, wherever necessary, at the expense of the district, construct a convenient roadway or crossing over and across any levee or embankment in said district.

''Section 5505. In any case where the work set out in the plan for drainage as provided in sections 5513 to 5516, inclusive, is found insufficient, a new estimate of benefits may be made, based on the additional work proposed, and additional assessments may be made thereon in conformity with section 5516, and the lands in said district, or any part of such lands, assessed in proportion to the benefits estimated as accruing to such lands because of such additional work and improvement.''

The first contention of counsel for relator is, that full and complete power and authority is expressly conferred by law upon the drainage district, and the board of commissioners thereof, to construct and maintain a bridge at the place mentioned in the petition.

This contention is made with much earnestness and apparent confidence as to its correctness, but counsel has not placed his finger upon the particular language which he claims confers that power and authority, but leaves it to the court to select and sort out those particular provisions from the numerous sections mentioned.

We have carefully read and re-read in full, all the sections of the statutes cited by counsel for relator, and, as previously stated, we have selected and copied therefrom all of the parts thereof which we think have any bearing whatever upon the questions presented by this appeal, but have failed to find any provision therein which supports the contention of counsel.

The only provision of the statutes cited which has any direct bearing upon the question of *building* bridges, is found in section 5503; but when carefully considered, it will be observed that it only authorizes an owner of land within the district, at his own expense, to construct a bridge across the ditch, drain, canal or excavation, but does not undertake to give that authority to the district or to the board of supervisors thereof. But the very next clause of the same section does authorize said board, "wherever necessary, at the expense of the district," to "construct a convenient roadway or crossing over and across any levee or embankment in said district." This language, however, is far from giving said board the authority to construct a bridge across the ditch or canal. The only authority it purports to grant to the board is the power to construct a *roadway,* not a bridge, across the levee or *embankment,* and not across the ditch or canal.

It is true other portions of the statutes quoted do speak of public roads crossing the ditches or canals, and provide for the assessment of the benefits and damages that will be done to the various kinds of prop-

erty located in the districts by reason of the improvements; they also make provisions for the collection of the benefits assessed and the payment of the damages done thereby, as well as for the payment of all obligations of the district.

Section 5511 also requires the board of engineers to "report the location of any and all public highways which may be crossed by the right of way of any ditch, levee or other improvement planned for said district, together with the estimated cost of bridges and approaches across said highway and made necessary by reason of the aforesaid improvements and drainage."

Notwithstanding these various and elaborate provisions of the statutes governing the numerous subjects mentioned, no provision so far has been pointed out which authorizes the construction of a bridge in a public highway across the ditch or canal in question, or across any other for that matter.

Viewing this case from the relator's viewpoint, the act is incomplete and rather anomalous, but when considered in the light of defendants' contention the anomaly disappears, and the void is filled by the insertion therein of section 5513, Revised Statutes 1909, cited by defendants, but not by relator. That section in so far as it is here material reads as follows:

"Said board of supervisors shall also have the power to construct or enlarge, or cause to be constructed or enlarged, all bridges that may be needed in or out of said district, across any drain, ditch, canal, excavation, public highway, railroad right of way, track, grade, fill or cut; and, further, shall have power to remove any bridge, fence, building or other improvement in or out of said district, which may be in the way of any drainage or reclamation works, or improvements of said district, and to construct roadways over levees and embankments. All bridges contemplated by this section shall be built according to and in compliance with the plans, specifications and

orders made or approved by the chief engineer of the district: *Provided,* however, that if such bridge shall belong to any corporation, or be needed over a public highway, or right of way of any corporation, the secretary of said board of supervisors shall give such corporation notice, by delivering to its agent, or officer, in any county wherein said drainage district is situated, the order of the board of supervisors of said district declaring the necessity for the construction or enlargement of said bridge. A failure to construct or enlarge such bridge within the time specified in such order shall be taken as a refusal to do said work by said corporation, and thereupon the said board of supervisors shall proceed to let the work of constructing or enlarging the same at the expense of the corporation for the cost thereof, which cost shall be collected by said board of supervisors from said corporation by suit therefor, if necessary. But before said board of supervisors shall let such work, it shall give some agent or officer of said corporation, now authorized by the laws of the State of Missouri to accept service of summons for said corporation, at least twenty days actual notice of the time and place of letting such work."

Counsel for relator cite numerous cases from other States in support of their contention, and discrediting the construction counsel for defendants have placed upon said article 1 of chapter 41, Revised Statutes 1909. With much care and considerable labor, we have examined each and all of those authorities, and have found that they are not controlling in this case.

They may be divided into three classes: first, those which have no bearing whatever upon the questions involved in the case at bar; second, those which are based upon an express statutory requirement; and, third, those which, in the absence of any statutory provision concerning the matter contained in the

drainage act, are based upon the general statutes or the common law of those States, and not this.

Returning to our own statutes: When we read the sections of the statute cited by counsel for the relator in connection with section 5513 cited by defendants, which must be done, there is no room for construction. The Legislature in plain, unambiguous and positive language provided therein, that when any bridge, in the opinion of the board of engineers, is necessary to be constructed in a public highway across the ditch or canal of a drainage company, the same shall be built by and at the expense of the county in which the same is located, and that if the county neglected or refused to construct the bridge within the time authorized by the statute, then the drainage company may do so, and recover the cost thereof from the county.

We are, therefore, clearly of the opinion that the duty of constructing the bridge in question rests upon the county of Macon, and not upon the defendant drainage district.

II. It is next insisted by counsel for relator that article 3 of chapter 102 Revised Statutes 1909, when read in connection with section 22 of article 10 of the Constitution, provides a complete scheme for building bridges, repairing roads and collecting taxes therefor, and gives to the authorities of the county, and particularly to the county court, absolute discretion as to when and where county revenues shall be expended for bridges, and absolute authority to prescribe specifications therefor; and predicated upon that insistence, counsel for relator further insist that if the view taken of the drainage laws before mentioned in so far as they relate to bridges is correct, then that part of those laws is in direct conflict with and repeals the laws just mentioned, giving to the county court abso-

Bridges:
Constitutionality
of Statutes.

lute discretion as to when and where it will build bridges, and when and where it will expend the county revenues, etc.

While this insistence of counsel is of but little, if any, importance beyond a mere argument, yet we deem the argument worthy of consideration.

Should it be conceded that such would be the case, it would not necessarily follow therefrom that those parts of the drainage laws would be involved, or that the construction we have placed upon them would be erroneous; but at most, if such dire results should flow from our construction, that would only be an argument against the correctness of our construction, though not conclusive by any means. But no such results would or could flow therefrom, for the reason that it is a well known rule of statutory construction that "where there are two acts and the provisions of one apply specially to a particular subject, which clearly includes the matter in question, and the other general in its terms, and such that if standing alone it would include the same matter, and thus conflict with each other, then the former act must be taken as constituting an exception to the latter or general act, and not a repeal of the former." [State ex inf. v. Amick, 247 Mo. 271, l. c. 292, and cases cited.]

It is perfectly clear from reading section 5513 of article 1 of chapter 41, Revised Statutes 1909, and article 3 of chapter 102, that the provisions of the former apply specially to those bridges which the board of engineers of drainage districts finds are necessary to be constructed in public highways where they cross ditches or canals of a drainage company, and by whom they must be built and paid for and that said article 3 is general in its provisions governing the construction of bridges generally throughout the country, as well as the expenditure of the revenues of the county therefor, and is sufficiently broad, if standing alone, to embrace bridges to be constructed in public high-

ways and across ditches of a drainage company; and if the former is not to be construed to be an exception to the latter, then there would be a clear conflict between them; but since both acts stand *in pari materia,* we must interpret them together, according to the rule before stated, and when so done the legislative intention is clear, and we must hold that said section 5513 is an exception to the general provisions contained in article 3 of chapter 102, Revised Statutes 1909, and therefore, are not in conflict with each other, as contended for by counsel for respondents.

III.   The third insistence of counsel for relator is stated in the following language:

"Should the court construe article 1, chapter 41, to mean that the county must bridge the highway where the same has been obstructed by the drainage ditch or that the drainage district has the right to build the bridges and sue the county and collect the amount spent for such purposes, it would bring all of the sections cited above into direct conflict with the laws of the State of Missouri regarding the collection of taxes and the disbursements thereof, including road taxes, bridge taxes, etc., and in conflict with the laws of the State of Missouri with regard to bridges, which gives the county the absolute discretion to decide whether or not a bridge shall be built, and, if built, the cost, size and character thereof, as well as in conflict with the spirit and letter of the Constitution of the State as hereinafter set out:

*Bridges: Taxation: Constitutionality of Statutes.*

"(1).   Such a construction would bring the drainage laws in conflict with sections 45, 46 and 47 of article 4, Constitution of Missouri.

"(2).   Also in conflict with section 51 of article 4 of the Constitution of Missouri, which provides that the General Assembly shall have no power to release or extinguish or authorize the releasing or extinguish-

ing, in whole or in part, the indebtedness, liability or obligation of any corporation or individual to this State, or to any county or other municipal corporation therein.

"(3).  And also would be in conflict with section 6 of article 9 of the Constitution.

"(4).  Also in conflict with section 10 of article 10 of the Constitution of Missouri."

We will consider these constitutional propositions in the order stated.  (And in passing, we wish to state that counsel for relator, after stating each of said propositions, cited one or more cases in support thereof, which for brevity, we have omitted.)

Attending the first:  The sections of the Constitution cited and which counsel contend would be violated should this court accept the construction placed upon article 1, chapter 41, Revised Statutes 1909, by counsel for defendants, are sections 45, 46 and 47 of article 4.

In brief, section 45 prohibits the Legislature from enacting any law lending the credit or aid of the State to any person, association or corporation, public or private, etc.; section 46 prohibits the Legislature from making any grant of public money or property to any such person or persons; and section 47 prohibits the Legislature from authorizing any county, city, town, township or other political subdivision of the State from aiding in a financial way, and from giving or granting any money or thing of value to, any such persons or corporations.

I am somewhat at a loss as to the meaning of this insistence, because it cannot be logically insisted that should the county of Macon construct the bridge in question at the cost of and out of the revenues thereof, that by so doing, the result would in any manner lend the credit of the State to the defendant corporation or give to said defendant any public money or property of any kind whatsoever, nor would such ac-

tion of the county court of Macon county amount to a grant of money or anything of value to said drainage company.

The drainage company would have no earthly use for such a bridge, nor has it any citizen who could or would use it. The residents of the districts are not citizens thereof, but are citizens of the county in which the district is located. The districts have no autonomy whatever (State ex rel. v. Taylor, 224 Mo. 393), and of course no citizenship.

The bridge in question, if built, will belong to the county and will be used by the entire citizenship of the county and State just as all other bridges of the county are used.

We are, therefore, of the opinion that there is no merit in this insistence, and rule the same against relator.

(2). The second contention is: That such construction by this court would violate section 51 of article 4 of the Constitution, which prohibits the Legislature from releasing, extinguishing, or authorizing the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any corporation or individual in this State, etc.

Counsel have clearly misconceived the meaning and purpose of this constitutional provision. It is self-evident that before that provision can have any application or can be called into operation, it must first be established that said corporation or individual is liable or indebted to some one, and that the act of the Legislature undertakes to release that liability or indebtedness; but in the case at bar no liability or indebtedness exists on the part of the defendant corporation to Macon county, nor does article 1 of chapter 41, Revised Statutes 1909, undertake or attempt to release any such obligation. Section 5513 of that article simply authorized the board of engineers of a drainage district to determine when, where and the

character of a bridge that is required to be constructed in the highways of the county wherever they cross the canals of such drainage district, instead of lodging that discretion in the first instance in the county surveyor, and later in the county court, as is now the case with other bridges.

The reason for this exception is apparent. The board of engineers is required to be scientific men, requiring very frequently the highest degree of the engineering skill. Many of those drainage schemes demand the services of the most eminent engineers in the country; and the Legislature has in express terms recognized that fact by authorizing the board of commissioners, when it deems it necessary, to employ consulting engineers of recognized ability. [Sec. 5511, R. S. 1909.] These engineers being men of learning and having carefully surveyed the lands, and estimated the rainfall and the capacity of the watercourses of the district, are in a much better position to know, and doubtless do know much better, the size of the ditches and the character of the bridges and crossings thereon than any ordinary county surveyor could possibly do. For instance, the canals of the Little River Drainage District of southeast Missouri traverse and drain swamp and overflowed lands in five or six counties, in all some five hundred thousand acres, to cost approximately $12,000,000 to $14,000,000; when completed the land reclaimed will be worth about $75,000,000, and it will be one of the greatest engineering feats in the country. Should the law tolerate each and every county engineer in the counties through which said canals pass to bridge or otherwise interfere with them or the flow of the water therethrough, dire results would occur, to the irreparable injury of the county, district and land owners therein.

But be that true or not, the Legislature for that reason, or for some other, in its wisdom saw proper to withdraw from the county surveyor the duty of locat-

ing all such bridges, and the authority to draw the plans and specifications for their construction, and conferred that duty and authority upon the board of engineers of the drainage company. But in both instances the county court must build and pay for them.

It seems to us that this law is not only just, but eminently wise when all the facts and circumstances are considered.

(3). The third constitutional question presented by counsel for relator is: That, should this court hold that the county court must, under the supervision of said board of engineers, construct and pay for the bridge in question, then the ruling of the court would be violative of section 6 of article 9 of the Constitution, which prohibits any county, township, city or other municipality from subscribing to the capital stock of any railroad or other corporation or association, and from making donations thereto, etc.

Counsel for respondent have likewise misconceived the meaning and application of this constitutional provision.

We are unable to see in what possible manner it can be said that if Macon county should build and pay for the bridge in question, such act would amount to a subscription to the capital stock of the defendant company, a thing it does not possess, nor would it amount to a donation of the cost thereof to said defendant.

The bridge when constructed will belong to Macon county and will not and cannot under any circumstances become the property of the drainage company.

(4). It is finally insisted that our construction of the drainage laws will violate section 10 of article 10, which prohibits the Legislature from imposing any tax upon counties, cities, towns or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town or other municipal purposes, etc.

Counsel for relator have not pointed out in what way the drainage laws have imposed a tax upon Macon county.

Section 5513, Revised Statutes 1909, simply provides that the county shall build the bridge in question under the plan and specifications of said board of engineers instead of under the supervision and control of the county surveyor. The money which will be required to pay for the bridge will come from the same source, whether it is built under the plans and supervision of the board of engineers or that of the county surveyor.

IV.    There are two or three other questions presented for determination; since, however, they go to the procedure only, and having, under the view we have taken of the case, become immaterial, we will not pass upon them.

Finding no error in the record, the judgment of the circuit court is affirmed. All concur, except *Lamm*, *C. J.*, and *Graves, J*