THE STATE OF TEXAS V. CITY OF AUSTIN, ET AL.

No. A-7173. Decided January 6, 1960.
Rehearing Overruled February 17, 1960.

THE STATE OF TEXAS V. CITY OF DALLAS, ET AL.

No. A-7174. Decided January 6, 1960.
Rehearing Overruled February 17, 1960.
(331 S.W. 2d Series 737)

350

*Will Wilson, Attorney General, H. Grady Chandler* and *John B. Webster,* Assistant Attorneys General, for petitioner.

*Doren R. Eskew,* City Attorney of the City of Austin; *H. P. Kucera,* City Attorney of the City of Dallas; *Ed Gossett, Whitney R. Harris,* of Dallas, for Southwestern Bell Tel. Co.; *Donald S. Thomas, Edward Clark, Frank Denius,* for Southern Union Gas Company; *Warren J. Collins* and *Howard Norris,* both of Dallas, for Lone Star Gas Company; *W. Autry Norton* and *Jos. Irion Worsham,* of Dallas, for Dallas Power & Light Company; *James Wetherbee, Willis L. Lea, Jr.,* of Dallas, *Looney, Clark, Matthews, Thomas* and *Harris,* of Austin, for respondents.

MR. JUSTICE WALKER delivered the opinion of the Court.

These declaratory judgment actions place in issue the constitutionality of Article 6674w-4, Vernon's Ann. Texas Civ. Stat., which was enacted by the legislature in 1957 as part of House Bill 179. Acts 1957, 55th Leg., p. 724, ch. 300, sec. 4A. The statute provides that the relocation of utility facilities

necessitated by the improvement of highways established as part of the National System of Interstate and Defense Highways shall be made by the utility at the cost and expense of the state provided such relocation is eligible for Federal participation. It evidently was adopted for the purpose of securing the benefits of the Federal-Aid Highway Act of 1956, which authorizes the use of Federal funds to reimburse the state for the cost of relocating utility facilities in the same proportion as such funds are expended on a given project, with the proviso that Federal money shall not be used for that purpose when payment to the utility violates either state law or a legal contract between the utility and the state. See U.S.C.A. sec. 123.

The two suits, which have been consolidated for submission on appeal, were instituted by the Attorney General in the name of the State of Texas, petitioner, one against the City of Dallas, Southwestern Bell Telephone Company, Dallas Power & Light Company, and Lone Star Gas Company, respondents, and the other against the City of Austin, Southwestern Bell Telephone Company, and Southern Union Gas Company, respondents. These municipalities and companies have various utility facilities located within the rights of way of city streets, alleys and other public places in the corporate limits of Austin and Dallas, and it will be necessary to relocate the same in connection with the improvement and construction of designated interstate highways. Respondents have taken the position that they are entitled to be reimbursed for the cost of doing this as provided in Article 6674w-4, while petitioner insists that the statute is unconstitutional. The law was upheld by the trial court, and the Court of Civil Appeals affirmed. 319 S.W. 2d 767. We affirm the judgment of the Court of Civil Appeals.

Petitioner's first four points of error in this Court assert that Article 6674w-4, to the extent that it authorizes the use of public funds to pay part of the cost of relocating utility facilities now situated in public ways and owned either by a municipality in its proprietary capacity or by a utility company, contravenes the Texas Constitution in that such payment would constitute: (1) a grant of public moneys to corporations and individuals in violation of Article III, Section 51; (2) a gift or loan of the credit of the state in violation of Article III, Section 50; (3) a release of the obligations of corporations and individuals in violation of Article III, Section 55; and (4) an appropriation for private or individual purposes in violation of Article XVI, Section 6. These four points are closely related and have been grouped by petitioner for purposes of argument.

1 In the absence of assumption by the state of part of the expense, it is clear that respondents could be required to remove at their own expense any installations owned by them and located in public rights of way whenever such relocation is made necessary by highway improvements. See City of San Antonio v. Bexar Metropolitan Water District, Texas Civ. App., 309 S.W. 2d 491 (wr. ref.) ; City of San Antonio v. San Antonio St. Ry. Co., 15 Texas Civ. App. 1, 39 S.W. 136 (wr. ref.) ; State of Tennessee v. United States, 6th Cir., 256 F. 2d 244. As pointed out in the Bexar Metropolitan Water District case, the main purposes of roads and streets are for travel and transportation. While public utilities may use the same for laying their lines, such use is subject to reasonable regulation by either the state, the county or the city, as the case may be. The utility may always be required, in the valid exercise of the police power by proper governmental authority, to remove or adjust its installations to meet the needs of the public for travel and transportation.

2 There is no material difference in this respect between a utility company and a municipal corporation. For many years the cities and towns of Texas have enjoyed exclusive dominion and control over the streets, alleys and other public places within their respective corporate limits, but this was pursuant to a statutory delegation of authority. See Articles 1016, 1146 and 1175, Vernon's Ann. Texas Civ. Stat. The Legislature acting for the state has primary and plenary power to control and regulate public roads and streets. It may delegate that power to counties or municipal corporations, but such a grant of authority may be revoked or modified at any time. See Robbins v. Limestone County, 114 Texas 345, 268 S.W. 915; West v. City of Waco, 116 Texas 472, 294 S.W. 832; 64 C.J.S. Municipal Corporations sections 1686, 1689. The statutory power of cities and towns over public ways within their corporate limits has now been abridged by Sections 2 and 5 of House Bill 179. See Articles 6674w-1 and 6674w-5, Vernon's Ann. Texas Civ. Stat. It is there provided that the State Highway Commission shall have the power to construct, maintain and operate designated state highways in any area of the state, whether in or outside the limits of any municipal corporation, and that the exercise of such power shall qualify and render inexclusive the dominion of any city or town with respect to the specific streets, alleys or other public ways affected thereby.

3 The Legislature, if it had decided to do so, could also have provided that any utility facilities standing in the way must

be moved at the owner's cost. Respondents recognize that such a requirement would be valid and enforceable. Many city ordinances as well as several of our statutes authorizing utility companies and municipal corporations to erect their lines along and upon public roads and streets stipulate that the owner of the facility may be required to relocate the same at its own expense so as to permit road and street improvements. See Articles 1433, 1433a, 1436a, and 1436b. Vernon's Ann. Texas Civ. Stat. These statutes and ordinances express the public policy of the state as it existed at the time of their adoption. Subject to constitutional limitations, however, that policy may be changed by the Legislature at any time. See McCain v. Yost, 155 Texas 174, 284 S.W. 2d 898; Scarborough v. Payne, Texas Civ. App., 198 S.W. 2d 917 (wr. ref.).

After the occurrence of events which under the law then existing give rise to an obligation on the part of an individual or corporation to the state, the Legislature has no power to release or diminish the obligation without consideration. Empire Gas & Fuel Co. v. State, 121 Texas 138, 47 S.W. 2d 265. See also Delta County v. Blackburn, 100 Texas 51, 93 S.W. 419. Moreover, the use of public money to pay a claim predicated on facts which generate no state liability constitutes a gift or donation in violation of our Constitution. See Tompkins v. Williams, Com. App., 62 S.W. 2d 70. Respondents could not, therefore, be reimbursed for all or any part of the expense incurred by them in relocating their lines prior to the adoption of House Bill 179. But the statute does not operate retrospectively, and respondents claim no right to reimbursement for costs incurred before it became effective.

4. Although petitioner argues otherwise, it cannot be said that respondents are under an absolute and continuing legal obligation to relocate at their own expense any utility installations owned by them and situated in public ways whenever such relocation is made necessary by highway improvements. Their use of streets and highways for this purpose is simply subject at all times to a valid exercise of the police power of the state. It is only when the full measure of that power is exerted that they are obligated to make the installations conform to highway improvements at their own expense. This duty would arise upon, and not before, the making of a lawful demand for relocation of the facilities. Here the Legislature has empowered the State Highway Commission to construct interstate and defense highways and to direct municipalities and utility companies to relocate their facilities. That grant of authority is conditioned, how-

ever, by the requirement that the utilities be reimbursed for the expense which they incur. In our opinion this does not constitute the release of an obligation to the state within teh meaning of Article III, Section 55 of the Constitution. See State v. Chariton Drainage District No. 1, 252 Mo. 345, 158 S.W. 633.

Article 6674w-4 obviously does not involve a gift or loan of the credit of the state unless it can be said that payment or relocation costs amounts to a grant of public money in violation of Article III, Section 51. The purpose of this section and of Article XVI, Section 6, of the Constitution is to prevent the application of public funds to private purposes; in other words, to prevent the gratuitous grant of such funds to any individual or corporation whatsoever. See Byrd v. City of Dallas, 118 Texas 28, 6 S.W. 2d 738. Statutes analogous to House Bill 179 have been upheld against this or similar constitutional attacks by the appellate courts of at least five other jurisdictions. Minneapolis Gas Co. v. Zimmerman, 253 Minn. 164, 91 N.W. 2d 642; Opinion of the Justices, 101 N.H. 527, 132 A. 2d 613; Opinion of the Justices, 152 Me. 449, 132 A. 2d 440; Department of Highways v. Pennsylvania Public Utility Commission, 185 Pa. Super. 1, 136 A. 2d 473 (reversed on other grounds, 394 Pa. 31, 145 A. 2d 538) ; Oswego & S. R. Co. v. State, 226 N.Y. 351, 124 N.E. 8. See also Delaware River Port Authority v. Pennsylvania Public Utility Commission, 393 Pa. 639, 145 A. 2d 172. On the other hand, the Tennessee statute was struck down by a closely divided court on the ground that the expenditure authorized thereby is not for a public purpose, State v. Southern Bell Telephone and Telegraph Co., 204 Tenn. 207, 319 S.W. 2d 90, and the same conclusion was reached by the Supreme Court of New Mexico. State Highway Commission v. Southern Union Gas Co., 65 N.M. 84, 332 P. 2d 1007. See also Southern Bell Tel. & Tel. Co. v. Commonwealth, Ky., 266 S.W. 2d 308; Mulkey v. Quillian, 213 Ga. 507, 100 S.E. 2d 268.

In considering this question, it should be noted that no net gain accrues to the utility from the relocation of its facilities in the manner and under the conditions prescribed by the statute. "Cost of relocation" is defined as including the entire amount paid by the utility properly attributable to such relocation after deducting any increase in value of the ne wfacility and any salvage value derived from the old facility. As pointed out by the Supreme Court of Minnesota, the reimbursement merely restores the utilities to the position in which they were prior to the relocation of their facilities. Minneapolis Gas Co. v. Zimmerman, supra. It also is clear that if not reimbursed for their non-

betterment costs, respondents will be subjected to substantial expense as a direct result of the highway improvement program.

Respondents benefit from the statute only in the sense that they are relieved of a financial burden which they could be required to bear. The question to be decided then is whether the use of public funds to pay part or all of the loss or expense to which an individual or corporation is subjected by the state in the exercise of its police power is an unconstitutional donation for a private purpose. We think not provided the statute creating the right of reimbursement operates prospectively, deals with the matter in which the public has a real and legitimate interest, and is not fraudulent, arbitrary or capricious.

**5** This question has not arisen frequently, because it is rather unusual for a legislative body to ameliorate an exercise of the police power. In most cases the courts are concerned only with whether the lawmakers have gone beyond the extreme limits of such power. When that is the issue, the judgment of the Legislature is supreme provided there is any reasonable basis for the action taken. It has often been said that the lawmakers have considerable discretion in determining not only what the interests of the public require but also what measures are necessary for the protection of those interests. If there is room for a fair difference of opinion as to the necessity for and reasonableness of an enactment which lies within the domain of the police power, the courts will not hold it void. See City of Bellaire v. Lamkin, 159 Texas 141, 317 S.W. 2d 43, 66 A.L.R. 2d 1289.

**6** Compensation is not required to be made for damage or loss resulting from a valid exercise of the police power. See State v. Richards, 157 Texas 166, 301 S.W. 2d 597, and authorities there cited. The absence of a cause of action does not, however, reduce the loss which individuals are often required to bear or make their injuries any less real. When the benefits to be gained by the public are not commensurate with the burdens imposed upon private persons, the law will not be permitted to stand. See Houston & T. C. Ry. Co. v. City of Dallas, 98 Texas 396, 84 S.W. 648, 70 L.R.A. 850; Missouri-Kansas-Texas R. Co. v. Rockwall County L. I. Dist. No. 3, 117 Texas 34, 297 S.W. 206. Individual hardship is thus to be weighed by the courts against the public advantages of a measure in determining whether the statute is a valid exercise of the police power. These factors are also to be considered by the Legislature in making its determination as to the manner in which such power may and should be exercised. It would be quite strange then to say that the lawmakers have

no choice except to act not at all when they conclude that a particular measure is essential to the public welfare but will be unduly burdensome to private citizens. If they decide to reimburse the latter for part or all of their actual loss or expense, the payment is not transformed into a mere gratuity simply because it may appear to the courts that the Legislature has not exerted the full measure of its power. Our fundamental law does not contemplate or require that every private injury and loss which may be necessary to protect or promote the public health, safety, comfort and convenience must always be borne by individuals and corporations.

If the statute involved in the Richards case had provided that the innocent owner might recover the value of his vehicle from the state, we certainly would not say that the payment amounted to a mere gratuity. Animals and buildings may be destroyed without compensation to the owner where such action is necessary to prevent the spread of disease or fire, but legislation authorizing such destruction upon condition that the owner is paid the value of his property does not contravene Article III, Sections 51 and 52 of our Constitution. Chambers v. Gilbert, 17 Texas Civ. App. 106, 42 S.W. 630 (wr. ref.). More nearly like the question involved in the present case was the one considered in City of Beaumont v. Priddie, Texas Civ. App., 65 S.W. 2d 434, 440 (judgments of lower courts reversed and cause dismissed for mootness, Texas & N. O. R. Co. v. Priddie, 127 Texas 629, 95 S.W. 2d 1290), which involved the validity of a contract whereby the city agreed to pay part of the expense incurred by a railroad in constructing underpasses where its tracks crossed public streets at grade. The judgment of the trial court enjoining the city from carrying out the agreement was affirmed on grounds which are not material here. It was also contended by the appellees that the city's contribution to the cost of construction came within the inhibition of Article XI, Section 3, of the Constitution, which prohibits a municipal corporation from making any appropriation or donation to a private corporation. In disposing of this question, the Court of Civil Appeals at Austin, speaking through Chief Justice McClendon, said:

"But, although the state may compel the railroad to bear the entire expense of grade separation, nevertheless it is not required to do so, but may bear the entire expense itself, or apportion it between itself and the railroad. While this power is generally recognized the cases in which it has been challenged as violative of constitutional provisions similar to those in this state inhibiting the state or its subdivisions from making dona-

tions to private corporations or individuals appear to be rare. Those in which the question has been considered uniformly hold that state or municipal contribution to the expense does not come within such inhibition. Lehigh Valley Ry. v. Canal Board, 204 N.Y. 471, 97 N.E. 964, Ann. Cas. 1913C, 1228; Brooke v. Philadelphia, 162 Pa. 123, 29 A. 387, 24 L.R.A. 781. We think the soundness of this holding cannot seriously be questioned. While the paramount duty rests upon the railroad to provide originally and thereafter to maintain the safety of the crossing, regardless of the requirements in that regard brought about by changes in conditions, still the interest therein of the state as representative of the public is such that the expenditure of public funds in this regard is a legitimate governmental function, and does not properly fall within the designation of a donation of public funds to a private enterprise. In the infinite variety of situations which present themselves, the state may properly make an adjustment of the expense, as the peculiar equities of each situation may in its judgment dictate. In this matter the judgment of the state is supreme, subject to judicial review only in case of fraudulent or arbitrary abuse of the power."

**7** It is important to remember that utility facilities are not placed in public streets merely for the convenience of private stockholders. As stated in Jones v. Carter, 45 Texas Civ. App. 450, 101 S.W. 514 (wr. ref.), "light, sewers, gas and water works are among the common necessities of modern cities, and it is a matter of common knowledge that such plants cannot be constructed and operated without running the lines and mains along or across the streets. They are some of the common uses to which streets are necessarily devoted." It is the interest of the public in receiving utility services which supports the right of utilities to use streets and highways for that purpose in the first place. See State v. Southwestern Bell Telephone Co., 338 Mo. 617, 92 S.W. 2d 612.

**8** Highway construction is clearly a governmental purpose for which public funds may properly be expended. See Texas Constitution, Article XVI, Section 24; Robbins v. Limestone County, supra. The removal of utility facilities which stand in the way is as necessary to the accomplishment of that purpose as the removal of trees and hills. Unlike trees and hills, however, the utility lines must be moved and restored at another location if the people are to receive services that are essential to the protection of their health and safety. The public thus has a direct and immediate interest in the relocation of utility facilities which would otherwise interfere with highway improvements,

and payment of the non-betterment cost thereof does not constitute a donation of public funds or an appropriation for a private purpose. As pointed out in Wilson v. City of Long Branch, 27 N. J. 360, 142 A. 2d 837, 847, "Utilities are necessary adjuncts of the public welfare. Their business operations and their property have been subject to special legislative treatment for many years. * * * In the present context, uninterrupted service during and after the completion of the * * * project is vital. Where removal of facilities is necessary, it is important that relocation be as expeditious and controversy-free as possible. That end is intimately related to the achievement of the overall public purpose * * * ."

**9,10** If the non-betterment cost of doing this is not paid by the state, the same must be borne initially by the utilities. In most instances the burden would ultimately fall upon local tax payers and rate payers, who must also provide part of the taxes used for highway construction. These individuals, who receive no special benefit from the highways, would thus be required to contribute twice to the overall cost of the undertaking. Under these circumstances, it was for the Legislature to determine whether to equalize the burden by paying the entire expense from state funds. In the words of Mr. Justice Cardozo, "this is a case where the Legislature, by action looking to the future, has defined the terms of equity and justice upon which it will go into an enterprise. In fixing these conditions, the Legislature has a wide discretion. * * * Courts will not revise its judgment unless there has been manifest abuse. * * * The state was about to execute a great public work. It saw that in the doing of that work there would be destruction of private property. Much of the damage would be damnum absque injuria. Nonetheless it would be damage. The result would be inequality in the distribution of public burdens. Some would pay more dearly than others in proportion to benefits received. This inequality the Legislature, fixing in advance the conditions of the undertaking, had the power to correct. It might refuse to launch an enterprise at the price of hardship and oppression. There was power to destroy and leave the loss where it might fall. There was also power to pay for the destruction, and thereby reestablish some uniformity of proportion between benefits and burdens. The question was for the Legislature whether the equity of compensation was strong enough to merit recognition. We cannot hold it to be illusory." Oswego & S. R. Co. v. State, supra.[1] In our opinion, Article

---

1.—In citing and quoting from this case, we are not to be understood as approving the New York rule that the legislature may recognize claims founded on equity and justice even though the same could not have been enforced in a court of law

6674w-4 is a reasonable exercise by the state of its power to assume the financial burdens of public improvements, and does not violate any of the constitutional provisions mentioned above.

**11,·12**  The statute does not grant an irrevocable or uncontrollable special privilege, because the law can be repealed at any time and in that event there will be no right to reinbursement for relocation expense thereafter incurred. It should be noted, however, that if the relocated lines are placed on right of way which will be owned by the utility, the cost of acquiring said right of way is not properly attributable to such relocation within the meaning of the Act. If the state should pay this cost, it would be in the position of buying for the utility that which it would be required to take under the power of eminent domain in the event the land where the relocated lines are placed were ever needed for a different and superior public use. This would be an unconstitutional gift for a private purpose, and the statute should, if reasonably possible, be given a construction that will not render it invalid. County of Cameron v. Wilson, 160 Texas 25, 326 S.W. 2d 162.

**13**  By the terms of Article 6674w-4, reimbursement for relocation costs is conditioned upon the eligibility of such relocation for Federal participation. Petitioner argues that a change in the conditions and extent of Federal. participation would modify the legal obligation of the State of Texas to utility owners, both private and municipal, and that the statute is therefore an un-constitutional delegation of legislative power to the United States, its Congress and agencies. Respondents insist that the statute is merely contingent legislation similar to that which was considered in The Big Aurora, 11 U.S. (7 Cranch) 382, 3 L. Ed. 378, and City of San Antonio v. Jones, 28 Texas 19. We do not agree with either of these contentions.

The law was complete when it left the hands of the Legislature and was not to become operative upon the happening of some contingency or future event. A change in the percentage of Federal participation will naturally affect the amount which the state receives by way of reimbursement, but will not alter in any way the obligation of the state to the utilities. No part of the expense will be paid by the state, of course, if the relocation is not eligible for Federal participation, but in making this provision the Legislature was simply establishing a class of relo-

---

if the state were subject to suit. See Lehigh Valley R. Co. v. Canal Board, 204 N. Y. 471, 97 N.E. 964.

cation projects for which the utilities will be entitled to reimbursement. It is our opinion that the classification is reasonable and that the law is not unconstitutional as a delegation of legislative power.

**14** The cost of relocation is to be paid out of the State Highway Fund, which is derived, in part, from motor vehicle registration fees and motor fuel taxes. See Articles 6675a-10, 6694, and 7065b-25, Vernon's Ann. Texas Civ. Stat. Under the provisions of Article VIII, Section 7a, of the Constitution, revenues received from these sources may be used only for constructing public roadways and for other designated purposes which are not material here. Petitioner argues that utility reloccation expense is not part of the cost of highway construction within the meaning of this provision. The courts of other jurisdictions are rather evenly divided on that question. Two have expressed the view that costs of relocation cannot be paid with funds that are authorized to be used for highway construction. Opinion of the Justices, 152 Me. 449, 132 A. 2d 440; Mulkey v. Quillian, supra. An equal number have held that the language of the Constitution should not be given such a narrow construction. Minneapolis Gas Co. v. Zimmerman, supra; Opinion of the Justices, 101 N.H. 527, 132 A. 2d 613. It seems to us that the latter con clusion is sound in principle and supported by the better reasoning. Article VIII, Section 7a, does not define or restrict the meaning of "constructing" in any way. The term obviously does not embrace merely the clearing and grading of the roadbed and the pouring of concrete, but includes "everything appropriately connected with, and necessarily incidental to, the complete accomplishment of the general purpose for which the fund exists." See 40 C.J.S. Highways, Sec. 176 h(2)(a). In Bell County v. Lightfoot, 104 Texas 346, 138 S.W. 381, it was held that the power given a governmental agency to issue bonds for constructing a public improvement carried with it the further authority to obtain funds in that manner for repairing and maintaining the completed improvement.

The constitutionality of a statute must be sustained by the courts unless its invalidity is apparent beyond a reaonable doubt. See Trapp v. Shell Oil Co., 145 Texas 323, 198 S.W. 2d 424. It has already been pointed out that the use of public ways for the installation of utility lines and mains is one of the proper and common purposes to which roads and streets are necessarily devoted, although their principal and primary use is for travel and transportation. The relocation of such facilities is made necessary by and is an integral part of the highway improve-

ment program. If the Legislature determines, as it has in this instance, that non-betterment cost thereof should be paid by the state, it is our opinion that the same is properly attributable to highway construction within the meaning of the Constitution.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered January 6, 1960.

MR. JUSTICE SMITH, on motion for rehearing.

On January 6, 1960, this court rendered its opinion in the above case. The opinion contained the following language:

"It should be noted, however, that if the relocated lines are placed on right of way owned by the utility, the cost of acquiring said right of way is not properly attributable to such relocation within the meaning of the Act. If the State should pay this cost, it would be in the position of buying for the utility that which it would be required to take under the power of eminent domain in the event the land where the relocated lines are placed were ever needed for a different and superior public use. This would be an unconstitutional gift for a private purpose, and the statute should, if reasonably possible, be given a construction that will not render it invalid."

On February 16, 1960, the State's motion came on for consideration by the court, and the motion for rehearing was overruled, after the above quoted language had been amended by inserting the words "which will be" between the words "way" and "owned."

Regardless of whether the quoted language before amendment or after amendment is ambiguous, it is my position that the entire holding is dictum, wholly unnecessary to a decision of the issues involved in this case and should be deleted. The question should not have been injected into this case, but should have been left for decision, if properly raised, in some future case.

The opinion should be modified to the extent herein suggested, and the motion for rehearing should be overruled.

Opinion delivered February 17, 1960.

Rehearing overruled February 17, 1960.