

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

March 26, 1975

The Honorable Hugh C. Yantis, Jr.
Executive Director
Texas Water Quality Board
P. O. Box 13246
Austin, Texas

Opinion No. H- 567

Re: Ability of special districts to use bond proceeds to purchase a portion of the capacity in a regional waste disposal system.

Dear Mr. Yantis:

In 1965 the voters of the Inverness Forest Improvement District approved a ballot proposition authorizing the issuance of construction bonds to finance the erection of a waterworks and sanitary sewer system to be owned and operated by the District. None of the bonds have yet been issued. The Gulf Coast Waste Disposal Authority has proposed that the District participate in a regional plant owned and operated by the Authority. As proposed, the plan calls for connection of the District's sewage system to a regional sewage treatment plant to be constructed and operated by the Authority which would secure the necessary permits from regulatory agencies. The water district would pay the Authority a monthly charge based upon gallons of sewage treated and would also pay a lump sum for a guaranteed percentage share of capacity in the plant. This lump sum payment for capacity in the plant would be paid from money derived from the sale of the previously authorized bonds. The District would not own any specific part of the sewage treatment plant or have any specific interest in the facilities themselves. The Bond Order issued by the District shortly after the election and pursuant to the authorization of the electorate contains certain stipulations and representations concerning the methods and purposes of the bond authorization and the retirement of any bonds issued.

You have explained that unless capital contributions from member governments to regional sewage systems in return for contractual guarantees

for a percentage of the regional system can be financed by the sale of bonds, the purpose of Chapter 21 of the Texas Water Code (which encourages regional systems) cannot be accomplished, and you ask:

> May the money obtained from the sale of bonds containing the above covenants be used to purchase a contract for capacity in a regional sewage treatment plant owned and operated by the Gulf Coast Waste Disposal Authority?

It is elementary that the proceeds of bonds voted by the people must be expended for the purposes for which they were voted. It is also elementary that in instances where the law visits upon a governing body the duty to exercise its sound judgment and discretion, courts have no right to interfere so long as such body acts lawfully. Barrington v. Cokinos, 338 S. W. 2d 133 (Tex. Sup. 1960); Lewis v. City of Fort Worth, 89 S. W. 2d 975 (Tex. Sup. 1936); 47 Tex. Jur. 2d, Public Securities and Obligations, section 31. But where, as here, the ballot proposal and Bond Order issued by the governing body particularly describe the purposes for which the bond proceeds will be used, and among them is a provision that certain municipal facilities will be purchased and constructed for the governmental body involved, the use of such proceeds to acquire contractual rights that do not result in the ownership or operation of the facilities by the governmental body is not authorized. City of Beaumont v. Priddie, 65 S. W. 2d 434 (Tex. Civ. App. --Austin 1933), judgment reversed and cause dismissed for mootness, 95 S. W. 2d 1290 (1936).

Though the Priddie case was ultimately adjudged a moot exercise, the opinion of the Court of Civil Appeals was later approved by the Supreme Court in State v. City of Austin, 331 S. W. 2d 737 (Tex. Sup. 1960), and carefully distinguished by the Supreme Court in Barrington, when it held a much broader ballot proposal not to prohibit the arrangement considered there.

In our opinion, a contractual arrangement by the District with the Authority in which the Authority would agree to build and operate a regional

sewage treatment plant and provide for a fee sewage treatment services of a guaranteed capacity to the District, but in which the District would neither own nor operate any part of the facilities, was not within the contemplation of the electorate when it authorized the District to issue bonds

> . . . for the purpose of purchasing and constructing a water and sanitary sewer system and a sewage disposal plant for the District, and for the further purpose of purchasing and constructing for the District a drainage system for the drainage of lands within the District . . . ." Inverness Forest Improvement District, Bond Order.

Nor do we believe such a project is within the scope of the Bond Order which states,

> The term 'system' as used in this order shall include and mean the waterworks and sanitary sewer system owned and operated by the District, and all extensions and replacements thereof and improvements thereto whensoever made.

The conclusion we have reached above makes it unnecessary for us to decide whether the Inverness Forest Improvement District could, in other circumstances, legally finance its participation in a regional waste disposal system by the sale of public securities.

## SUMMARY

Proceeds from the sale of bonds authorized in 1965 by the electorate of the Inverness Forest Improvement District may not be used to contract for sewage treatment services from the Gulf Coast Waste Disposal Authority where the District would neither own nor operate the sewage system facilities.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:


DAVID M. KENDALL, First Assistant


C. ROBERT HEATH, Chairman
Opinion Committee

lg