

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

July 24, 1962

Honorable Jerry Dellana
County Attorney
Travis County Courthouse
Austin, Texas

Dear Mr. Dellana:

Opinion No. WW-1397

Re: Constitutionality of
House Bill 45, Acts 57th
Legislature, Third Called
Session, 1962, Chapter
28, page 73.

     You have requested the opinion of this office regarding the constitutionality of House Bill 45, Acts 57th Legislature, Third Called Session, 1962, chapter 28, page 73, which has been codified as Article 1581f of Vernon's Civil Statutes. This enactment of the Legislature reads as follows:

     "Section 1. The counties of the State of Texas are hereby authorized to pay for the re-location of water lines owned by water control and improvement districts when such relocation is necessary to complete the construction or improvement of Farm-to-Market Roads as defined by Sub-section 4-b of Article XX of Chapter 184, Acts of the Forty-seventh Legislature, Regular Session, 1941, as amended, provided the water control and improvement district which owns the water lines to be relocated agrees to re-pay the county for the cost of relocating the water lines within twenty (20) years with interest thereon at a rate equal to that paid by the county on their Road and Bridge Fund time warrants."

     Not having been referred to any particular provisions of the Texas Constitution by your opinion request we shall direct this opinion to the consideration of whether House Bill 45 is proscribed by any of the following constitutional provisions:

     A. Section 50 of Article III which prohibits a gift or loan of the credit of the State to any person or corporation.

     B. Section 51 of Article III which prohibits the grant of public money to any individual or corporation.

C. Section 52 of Article III which prohibits legislation authorizing any county to lend or grant public money to any individual or corporation.

D. Section 6 of Article XVI which prohibits an appropriation of public funds for private or individual purposes.

E. Section 3 of Article XI which prohibits a county from lending its credit or donating funds to any corporation or association.

We are aware of no other constitutional provisions which could be considered as proscribing House Bill 45.

All utilities, both public and private, place their lines under, across, over and along the public roads and ways of this State subject to the plenary right and duty of the duly authorized governmental agency to maintain and improve such roads and ways in the public interest. That such utilities may be required to relocate their lines at their own expense when necessitated by the construction or improvement of the public roads or ways is a principal inherent in the assertion of the police power of the State. Barrington v. Cokinos, 161 Tex. 136, 338 S.W.2d 133 (1960); State v. City of Austin, 160 Tex. 348, 331 S.W.2d 737 (1960); City of San Antonio v. Bexar Metropolitan Water District, 309 S.W.2d 491 (Tex.Civ. App. 1958, error ref.). The policy requiring the relocation of utility lines is likewise expressed in various specific statutory enactments, to wit: Articles 1433, 1433a, 1436a and 1436b of Vernon's Civil Statutes. We perceive of no sound reason why water control and improvement districts should not be treated as other utilities in this respect and hereby hold that their use of the public roads is subject to the same regulation and control as any other utility.

State v. City of Austin, supra, and Barrington v. Cokinos, supra, are well considered opinions and contain excellent discussions of the constitutional questions involved in the use of public funds in payment of the cost of relocating utility facilities when such is necessitated by the exercise of the police power. The principles of law therein pronounced are governing in this instance.

In State v. City of Austin, supra, our Supreme Court sustained the constitutionality of Article 6674w-4 of Vernon's

Civil Statutes. This statute required the State to bear the cost of relocation of utility facilities necessitated by the National System of Interstate and Defense Highways. During the course of the opinion at page 742 it is stated:

> "Although petitioner argues otherwise, it cannot be said that respondents are under an absolute and continuing legal obligation to relocate at their own expense any utility installations owned by them and situated in public ways whenever such relocation is made necessary by highway improvements. Their use of streets and highways for this purpose is simply subject at all times to a valid exercise of the police power of the state. It is only when the full measure of that power is exerted that they are obligated to make the installations conform to highway improvements at their own expense. This duty would arise upon, and not before, the making of a lawful demand for relocation of the facilities. Here the Legislature has empowered the State Highway Commission to construct interstate and defense highways and to direct municipalities and utility companies to relocate their facilities. That grant of authority is conditioned, however by the requirement that the utilities be reimbursed for the expense which they incur. In our opinion this does not constitute the release of an obligation to the state within the meaning of Article III, Section 55, of the Constitution."

The following language from the opinion of Justice McClendon in City of Beaumont v. Priddie, 65 S.W.2d 434 (Civ. App. 1933) judgment of lower courts reversed and cause dismissed for mootness. Texas & N.O.R. Co. v. Priddie, 127 Tex. 629, 95 S.W.2d 1290 (1936), is quoted with approval in State v. City of Austin, supra, at page 744:

> "But, although the state may compel the railroad to bear the entire expense of grade separation, nevertheless it is not required to do so, but may bear the entire expense itself, or apportion it between itself, and the railroad. While this power it generally recognized, the cases in which it has been challenged as violative of constitutional provisions similar

> to those in this state inhibiting the state
> or its subdivisions from making donations
> to private corporations or individuals appear
> to be rare. Those in which the question
> has been considered uniformly hold that state
> or municipal contribution to the expense does
> not come within such inhibition. Lehigh
> Valley R.Co. v. Canal Board, 204 N.Y. 471,
> 97 N.E. 964, Ann.Cas. 1913C, 1228; Brooke
> v. City of Philidelphia, 162 Pa. 123, 29
> A. 387, 24 L.R.A. 781. We think the soundness
> of this holding cannot seriously be questioned.
> While the paramount duty rests upon the rail-
> road to provide originally and thereafter to
> maintain the safety of the crossing, regardless
> of the requirements in that regard brought
> about by changes in conditions, still the
> interest therein of the state as representative
> of the public is such that the expenditure of
> public funds in this regard is a legitimate
> governmental function, and does not properly
> fall within the designation of a donation of
> public funds to a private enterprise. In the
> infinite variety of situations which present
> themselves, the state may properly make an
> adjustment of the expense, as the peculiar
> equities of each situation may in its judg-
> ment dictate. In this manner the judgment
> of the state is supreme, subject to judicial
> review only in case of fraudulent or arbitrary
> abuse of power."

The Court went on to hold that Article 6674w-4 did not amount to a grant or loan of public money in violation of Section 51 of Article III or of Section 6 of Article XVI of the Texas Constitution for the reason that the utility was merely restored to its former position by operation of the statute and in fact derived no net gain thereby. The Court further held that the construction and improvement of public roads and ways is a governmental purpose for which public funds could properly be expended, using this language at page 745:

> ". . .The removal of utility facilities
> which stand in the way is as necessary to the
> accomplishment of that purpose as the removal
> of trees and hills. Unlike trees and hills,
> however, the utility lines must be moved and
> restored at another location if the people

are to receive services that are essential
to the protection of their health and safety.
The public thus has a direct and immediate
interest in the relocation of utility facilities
which would otherwise interfere with highway
improvements, and payment of the non-better-
ment cost thereof does not constitute a donation
of public funds or an appropriation for a pri-
vate purpose. . . ."

In the case of Barrington v. Cokinos, 161 Tex. 136,
338 S.W.2d 133 (1960), our Supreme Court sustained the consti-
tutionality of a contract whereby the City of Beaumont was to
bear the cost of relocating a railroad right of way through
the city and the lowering of grade crossing at city streets.
At page 140 of that opinion, in commenting upon the purpose
of Section 3 of Article XI the Court stated:

". . .It does not prohibit all business
dealings with private corporations and associa-
tions, but municipal funds or credit may not
be used simply to obtain for the community and
its citizens the general benefits resulting
from the operation of such an enterprise. On
the other hand an expenditure for the direct
accomplishment of a legitimate public and
municipal purpose is not rendered unlawful
by the fact that a privately owned business
may be benefited thereby."

It was further held that the contract to bear the
cost of relocation of the railroad right of way did not violate
Section 51 of Article III or Section 6 of Article XVI of the
Texas Constitution.

Adverting to the question at hand, it is important
to observe that House Bill 45 does not relieve water control
and improvement districts of the eventual burden of the ex-
pense of the relocation of lines necessitated by the construction
or improvement of Farm-to-Market Roads but merely allows a
county, at its discretion, to bear the immediate cost of such
relocation upon the condition that the District repay the
county with interest over a 20 year period. The pronouncements
in the above discussed decisions leave no doubt that legislation
which entirely relieved a water control and improvement district
of the cost of relocation of its lines when necessitated by the
construction or improvement of public roads and required such

relocation costs to be paid with public funds would be within the prerogative of the Legislature and not in violation of any constitutional prohibition. Having the power to afford either complete relief or no relief from the consequences of the exercise of the police power, we are of the opinion that the Legislature necessarily has the power to accord partial relief from the exercise of the police power in any degree or measure which lies between the two extremes. Therefore you are hereby advised that House Bill 45 is constitutional.

S U M M A R Y

House Bill 45, Acts 57th Legislature, Third Called Session, 1962, chapter 28, page 73 which authorizes counties, at their discretion, to bear the cost of relocating the lines of water control and improvement districts when necessitated by the construction or the imporvement of Farm-to-Market Roads upon the condition that the county be repaid by the district over a 20 year period with interest is constitutional.

Very truly yours,

WILL WILSON
Attorney General of Texas

By: W. O. Shultz
Assistant

WOS:mkh

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
John Reeves
Morgan Nesbitt
Coleman Gay

REVIEWED FOR THE ATTORNEY GENERAL
BY: Leonard Passmore