

# THE ATTORNEY GENERAL

# OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

February 1, 1972

Honorable James U. Cross
Executive Director
Texas Parks & Wildlife Dept.
John H. Reagan Building
Austin, Texas 78701

Opinion No. M-1061

Re: Several questions relating to authority of the Texas Parks & Wildlife Department to act pursuant to the "Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970" (Public Law 91-646; 84 Stat. 1894) relative to acquisition projects where Federal matching funds are requested.

Dear Mr. Cross:

In your recent request for an opinion you ask the following questions:

"1. Does the Parks and Wildlife Department under present state law have the authority to make or accept payments for relocation assistance costs required by Section 210 of Public Law 91-646 for state acquisition projects for new state parks and/or wildlife management areas or fish hatcheries prior to July 1, 1972?

"2. Does the Parks and Wildlife Department under present state law have the authority to make or accept payments for relocation assistance costs required by Section 210 of Public Law 91-646 for state acquisition projects for new state parks and/or wildlife management areas or fish hatcheries after July 1, 1972?

"3. Do Counties, Cities, Water Authorities or Water Districts who are authorized to acquire

-5178-

and develop park facilities under present state
law have authority to make or accept payments
for relocation assistance costs required by Section
210 of Public Law 91-646 for local parks projects
so as to qualify for Bureau of Outdoor Recreation,
Land and Water Conservation funds as administered
by the Parks and Wildlife Department prior to
July 1, 1972?

"4. Do Counties, Cities, Water Authorities or
Water Districts who are authorized to acquire and
develop park facilities under present state law
have authority to make or accept payments for
relocation assistance costs required by Section
210 of Public Law 91-646 for local parks project
so as to qualify for Bureau of Outdoor Recreation,
Land and Water Conservation funds as administered
by the Parks and Wildlife Department after July 1,
1972?

"5. Does the Parks and Wildlife Department under
present law have authority to comply with the pro-
visions of Section 301 through Section 305 of Public
Law 91-642 [sic. 91-646]?

"6. In the event you find that the Department has
the authority to pay relocation assistance costs,
what specific State funds may be used for the
payment?"

The "Uniform Relocation Assistance and Real Property Acquisition
Act of 1970" (Public Law 91-646; 84. Stat. 1894, 23 U.S.C.A. 501 et.
seq.)[1] (hereinafter referred to as the Federal Act) requires the State,
in order to qualify for Federal financial assistance to pay all or part of
the cost of any program or project, to give satisfactory assurance to
the Federal Government that:

"Sec. 210. Notwithstanding any other law, the
head of a Federal agency shall not approve any
grant to, or contract or agreement with, a State
agency, under which Federal financial assistance

---

[1] See also "Interim Regulations and Procedures for Implementing the
Uniform Relocation Assistance and Real Property Acquisition Policies
Act of 1970" Federal Register, Vol. 36, No. 74, Friday, Apr. 16, 1971.

will be available to pay all or part of the costs
of any program or project which will result in
the displacement of any person on or after the
effective date of this title, unless he receives
satisfactory assurances from such State agency
that --

"(1) fair and reasonable relocation payments and
assistance shall be provided to or for displaced
persons, as are required to be provided by a
Federal agency under sections 202, 203, and 204
of this title;

"(2) relocation assistance programs offering the
services described in section 205 shall be pro-
vided to such displaced persons;

"(3) within a reasonable period of time prior to
displacement, decent, safe, and sanitary replace-
ment dwellings will be available to displaced
persons in accordance with section 205(c) (3). "

The relocation payments and assistance referred to in Section 210
are summarized below:

Section 202 provides for moving and related expenses, as follows:

"(1) actual reasonable expenses in moving himself,
his family, business, farm operation, or other
personal property;

"(2) actual direct losses of tangible personal
property as a result of moving or discontinuing
a business or farm operation, but not to exceed
an amount equal to the reasonable expenses that
would have been required to relocate such prop-
erty, as determined by the head of the agency; and

"(3) actual reasonable expenses in searching for
a replacement business or farm.

"(b) Any displaced person eligible for payments under subsection (a) of this section who is displaced from a dwelling and who elects to accept the payments authorized by this subsection in lieu of the payments authorized by subsection (a) of this section may receive a moving expense allowance, determined according to a schedule established by the head of the Federal agency, not to exceed $300; and a dislocation allowance of $200.

"(c) Any displaced person eligible for payments under subsection (a) of this section who is displaced from his place of business or from his farm operation and who elects to accept the payment authorized by this subsection in lieu of the payment authorized by subsection (a) of this section, may receive a fixed payment in an amount equal to the average annual net earnings of the business or farm operation, except that such payment shall be not less than $2,500 nor more than $10,000. In the case of a business no payment shall be made under this subsection unless the head of the Federal agency is satisfied that the business (1) cannot be relocated without a substantial loss of its existing patronage, and (2) is not a part of a commercial enterprise having at least one other establishment not being acquired by the United States, which is engaged in the same or similar business. . . ."

Section 203 provides for replacement housing for homeowners as follows:

"(a) (1) In addition to payments otherwise authorized by this title; the head of the Federal agency shall make an additional payment not in excess of $15,000 to any displaced person who is displaced from a dwelling actually owned and occupied by such displaced person for not less than one hundred and eighty days prior to the initiation of negotiations for the acquisition of the property. . . ."

Section 204 provides for replacement housing for tenants and certain others, as follows:

"(1) the amount necessary to enable such displaced person to lease or rent for a period not to exceed four years, a decent, safe, and sanitary dwelling of standards adequate to accommodate such person in areas not generally less desirable in regard to public utilities and public and commercial facilities, and reasonably accessible to his place of employment, but not to exceed $4,000, or

"(2) the amount necessary to enable such person to make a downpayment (including incidental expenses described in section 203 (a) (1) (C) on the purchase of a decent, safe, and sanitary dwelling of standards adequate to accommodate such person in areas not generally less desirable in regard to public utilities and public and commercial facilities, but not to exceed $4,000, except that if such amount exceeds $2,000, such person must equally match any such amount in excess of $2,000, in making the downpayment."

Section 205 provides for relocation assistance advisory services, as follows:

"(c) Each relocation assistance advisory program required by subsection (a) of this section shall include such measures, facilities, or services as may be necessary or appropriate in order to --

"(1) determine the need, if any of displaced persons, for relocation assistance;

"(2) provide current and continuting information on the availability, prices, and rentals, of comparable decent, safe, and sanitary sales and rental housing, and of comparable commercial properties and locations for displaced businesses;

"(3) assure that, within a reasonable period of time, prior to displacement there will be available in areas not generally less desirable in regard to public utilities and public and commercial facilities and at rents or prices within the financial means of the families and individuals displaced, decent, safe, and sanitary dwellings. as defined by such Federal agency head, equal in number to the number of and available to such displaced persons who require such dwellings and reasonably accessible to their places of employment, except that the head of that Federal agency may prescribe by regulation situations when such assurances may be waived;

"(4) assist a displaced person from his business or farm operation in obtaining and becoming established in a suitable replacement location;

"(5) supply information concerning Federal and State housing programs, disaster loan programs, and other Federal or State programs offering assistance to displaced persons; and

"(6) provide other advisory services to displaced persons in order to minimize hardships to such persons in adjusting to relocation. "

Your attention is directed to Senate Bill 521, Acts 62nd Legislature, Regular Session, 1971, which amended Article 6674n-4, Vernon's Civil Statutes, to read:

"Sec. 1. When in the acquisition of real property for a program or project undertaken by any department, agency, or instrumentality of this State or of a political subdivision of this State it becomes necessary that any individual, family, property of a business concern, farm or ranch operation, or nonprofit organization be displaced they may be paid their moving expenses, relocation payments, be provided financial assistance to acquire replacement housing, or allowed

rental supplements and compensated for expenses incidental to the transfer of property to the State all of which payments or expenditures are hereby declared to be an expense and cost of such property acquisition. Each department, agency, or instrumentality of this State or of a political subdivision of this State shall formulate the rules and regulations necessary to carry out the provisions of this section and shall not authorize payments or expenditures in excess of those authorized by or under the Federal Uniform Relocation Assistance and Real Property Acquisition Policies program.

"Sec. 2. Each department, agency, or instrumentality of this State or of a political subdivision of this State may provide a relocation advisory service for all individuals, families, business concerns, farm and ranch operations, and non-profit organizations which shall be compatible with the Federal Uniform Relocation Assistance Advisory program.

"Sec. 3. The Comptroller of Public Accounts is hereby authorized to issue a State warrant on the appropriate account of each State department or agency for all relocation costs and the costs of administering the relocation assistance program. "

Expenditure of public monies for the purposes stated in this Article is for a public purpose. Davis v. City of Lubbock, 160 Tex. 38, 326 S. W. 2d 699 (1959); Atty. Gen. Opin. Nos. C-530 (1965) and M-782 (1971).

The above statute is the enabling statute which the Texas Legislature passed in order that the various departments of the State would be able to comply with the Federal Act. It should be noted that nothing in the Federal Act is intended to change State laws regarding the amount of damages or the value of property in condemnation proceedings. This is the interpretation of the Economic Development Administration of the U. S. Department of Commerce, charged with the administration and enforcement of the Act.

Relocation assistance costs, when authorized by the Legislature, have been upheld as constitutional and do not necessarily amount to a gift or loan of credit of the State or as a release of an obligation of individuals, or as an appropriation for private or individual purposes. See State v. City of Austin, 331 S. W. 2d 737 (Tex. Sup. 1960).

Senate Bill 521, supra, authorizes "any department, agency, or instrumentality of this State or of a political subdivision of this State" to expend funds necessary to carry out the provisions of the Federal Act. We are here concerned only with the power of the State in the acquisition of property by purchase as distinguished from condemnation. Generally, the State is held to have the same rights and powers in respect of such acquisition of property as an individual. It may acquire real or personal property by conveyance or otherwise and hold or dispose of it or apply it to any purpose as the State sees fit. 52 Tex. Jur. 2d 737, State of Texas, Section 27, and cases cited. Therefore, Questions 1, 2, 3, and 4 are answered in the affirmative.

We now consider your Question 5. Article 6081r, Vernon's Civil Statutes, reads as follows:

> "Section 1.  The Parks and Wildlife Department of the State of Texas is hereby designated as the State Agency to cooperate with the Federal Government in the administration of the provisions of any federal assistance programs for the planning, acquisition, operation, and development of the outdoor recreation resources of the state, including the acquisition of lands and waters and interests therein, and specifically to cooperate with the Federal Government in the administration of the provisions of the 'Land and Water Conservation Fund Act of 1965' (Public Law 88-578) effective January 1, 1965, and any amendments which may be added thereto from time to time, in the event no other State Agency is by law designated to cooperate with the Federal Government in the administration of the provisions of such Act or other Acts which may be hereafter enacted by the Congress. " (Emphasis added. )

Sec. 304 (a) of the Federal Act provides that a land owner may be reimbursed:

". . . for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of the condemnation proceedings, if:

"(1) the final judgment is that the Federal agency cannot acquire the real property by condenmation; or,

"(2) the proceeding is abandoned by the United States. "

Our opinion is that Article 3265 provides for payment of the same expenses or items wherein it provides that where a plaintiff

". . .. desires to dismiss, abandon the proceedings, or refuse the jury verdict returned by the jury or by a court prior to entry of judgment, said plaintiff shall by motion be heard thereon, and the court hearing the same may as part of the terms of granting such motion, make an allowance to the landowner for reimbursement of his reasonable attorneys' and appraisers' fees, shown to have been incurred, and reimbursement for all necessary expenses incurred by the filing and hearing of such condemnation case to date of such hearing on said motion; . . ."

Furthermore, in enacting Article 6674n-4, supra, the Legislative intent appears clear that it was contemplated that the State and its instrumentalities were to provide a program "compatible with the Federal Uniform Relocation Assistance and Real Property Policies Program. " In this connection, it authorized the State, in the acquisition of real property for a program or project, to compensate the displaced owner for various expenses to him. These include:

"moving expenses, relocation payments, . . . financial assistance to acquire replacement

housing, or allowed rental supplements and com-
pensated for expenses incidental to the transfer
of property to the State all of which payments
or expenditures are hereby declared to be an
expense and cost of such property acquisition. "

Question No. 5 particularly inquires whether or not the Parks
and Wildlife Department has present authority to comply with the
provisions of Section 301 through Section 305 of Public Law 91-642
(sic 91-646). These sections are codified as 42 U.S.C. 4651 through
4655. The requirements of the federal law are of two types; mandatory
and non-mandatory. Certain of the non-mandatory policies enumerated
in 42 U.S.C. 4651 and 4652 present very serious questions concerning
their permissibility under state law. In particular we point to 42 U.S.C.
4651 (9) which provides a policy for the acquisition of uneconomic
remnants and 42 U.S.C. 4652(b) (1) and (2) which provide a policy for
the appraisal and purchase of buildings owned by a tenant. You have
stated that the question raised by 42 U.S.C. 4651 (9) is not posed for
opinion because you do not anticipate the circumstance of acquiring
an uneconomic remnant. For that reason we express no opinion con-
cerning this. Because we do not consider it necessary in order to
answer your question five, we express no opinion on the problem pre-
sented by 42 U.S.C. 4652.

It is enough that we can assure you that you may comply with the
provisions of 42 U.S.C. 4653 and 4654 (Sections 303 and 304) which are
the mandatory provisions of the federal act, and that we can assure you
that "to the greatest extent practicable under state law" you may be
guided by the land acquisition policies in 42 U.S.C. 4651 and 4652
(Section 301 and 302). That you may comply with the mandatory re-
quirements, and may comply "to the greatest extent practicable under
state law" with the non-mandatory requirements is sufficient to enable
you to comply with 42 U.S.C. 4655 (Section 305). If it is necessary
to define in particular circumstances what is "the greatest extent
practicable under state law," we will advise you as necessary in the
context of particular situations.

Our conclusion is that the obligation for uniform payments and
services under Section 304 of the Federal Act can be met by the State.

Reimbursement to such owner for his reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of the condemnation proceedings can be paid if the final judgment is that the federal or state agency cannot acquire the real property by condemnation, or the proceeding is abandoned by the United States or state, or the plaintiff, in an inverse condemnation action, shall receive a judgment or settlement in his favor.

We also observe that under Section 213 (b) of the Federal Act, the State is empowered, through promulgation of appropriate rules and regulations by the state agency concerned to give assurance that a displaced person will be paid promptly and that any person aggrieved by a determination as to eligibility for a payment authorized by the Uniform Act may have his application reviewed by the head of the federal or state agency having authority over the applicable program or project.

We are not here concerned with whether the expenditures will require the approval of the Governor in order to consummate such transactions. Nor are we concerned with the limit of the expenditures as may or may not be involved in the rider to the current Parks and Wildlife Department Appropriation. See the General Appropriation Bill, Article III, p. 113, et seq. We also note that where there is a lack of statutory authority to negotiate an agreement with the United States, Article IV, Section 10, Constitution of Texas, authorizes the Governor to approve a state agency agreement so as to become a binding contract. See Attorney General Opinion No. M-312 (1968).

In answer to your sixth and last question concerning what specific State funds may be used to pay the relocation assistance costs, you are advised that any of the specific state funds listed in your request may be used for the uses and purposes as set out in the statutes or Appropriation Bill authorizing the same.

The General Revenue Fund is available and is covered by the specific appropriation in the current Appropriations Bill, Item 10, Article III, page 106, which may be used for the acquisition and development of certain sites for parks improvements. State Parks Fund No. 64, pursuant to Article 607h, Section 10, Vernon's Civil

Statutes, may be used for the acquisition of land or park purposes. This is an authorized contributional fund under Article III, Section 49e, Constitution of Texas. Special Game and Fish Fund No. 9 may be used to pay such relocation assistance costs incurred in connection with the acquisition of land and water for hunting and fishing purposes as provided in Article 978f-3a, Section 6, Texas Penal Code. See also Article 895 of the Penal Code and Article 4386b, Vernon's Civil Statutes. Articles 4050b, 4050d, and 4050e, Vernon's Civil Statutes, expressly authorize the acceptance of funds to be so used. Land and Water Recreation and Safety Fund No. 63 is likewise available for the purpose of acquiring land for recreational purposes as well as to enforce the Water Safety Act, as authorized in Article 9.13(6a), B, Taxation-General, Vernon's Civil Statutes. Special Boat Fund No. 59 is authorized to be used to acquire land as necessary for construction and maintenance of boat ramps on or near public waters. Federal Land and Water Conservation Fund No. 223 is a special fund set up by the Comptroller for B. O. R. Federal Funds and relocation costs may be paid out of it in connection with purchase of park lands for state parks. Texas Park Fund No. 31 is also available where under Article 7.06, Section (3) (a), Taxation-General, Vernon's Civil Statutes, land is acquired for planning and development of state parks and historic sites.

## SUMMARY

The Parks and Wildlife Department has the authority under present State law to make or accept payments prior and subsequent to July 2, 1972, for relocation assistance costs as required by the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (Public Law 91-646; 84 Stat. 1894, 23 U.S.C.A. 501, et seq.). The same authority is vested in Counties, Cities, Water Authorities and Water Districts so as to qualify for Bureau of Outdoor Recreation, Land and Water Conservation funds as administered by the Parks and Wildlife Department, both prior to and subsequent to July 2, 1972.

The Parks and Wildlife Department has the authority under present State law to comply with the provisions of the Uniform Relocation Assistance and

Real Property Acquisition Policies Act of 1970 relating to uniform policy or real property acquisitions and the payment of expenses required by Section 301 through 305 of the Federal Act. However, no opinion is expressed on whether authority under state law exists for acquisition of "uneconomic remnants" as contemplated by Section 301 (9) of the Federal Act.

The Parks and Wildlife Department has the authority to pay relocation assistance costs out of the General Revenue Fund; the State Parks Fund No. 64, Special Game and Fish Fund No. 9, Land and Water Recreation and Safety Fund No. 63, Special Boat Fund No. 59, Federal Land and Water Conservation Fund No. 223, and the Texas Park Fund No. 31, where such costs are incurred for the uses and purposes set out in the Appropriation Bill or authorizing statute.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Bill Flanary
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

John Banks
Houghton Brownlee
John Reeves
Mike Stork

SAM McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant