Honorable Mary Polk Chairman Committee on Human Services Texas House of Representatives P. O. Box 2910 Austin, Texas 78769
Re: Constitutionality of House Bill No. 1002 relating to a surcharge on telephone bills to pay for telecommunication devices for the deaf
Dear Representative Polk:
You have requested our opinion regarding the constitutionality of House Bill No. 1002, represently pending in the Sixty-eighth Legislature. The bill establishes a `telecommunications device placement board,' section 82.003, within the Texas Commission for the Deaf, whose function it is to administer the `telecommunications device placement program . . . to provide telecommunications devices to eligible individuals.' Sec. 82.002. A `telecommunications device' under the bill is:
 a device used with a basic telephone unit to provide a means by which deaf, hearing impaired, or speech impaired individuals can effectively communicate.
Sec. 82.001(6).
A deaf, hearing impaired, or speech impaired person who desires to participate in the program is required to apply to the Texas Commission for the Deaf, which is empowered to issue eligibility certificates to qualified individuals. The board is directed to distribute tele-communications devices to `telephone distribution centers used by utilities providing telephone services,' section 82.009, which in turn distribute them to individuals who present eligibility certificates.
House Bill No. 1002 also establishes a `telecommunications device placement fund' as a `special fund outside the state treasury.' The fund: `is created through the imposition and collection of a surcharge on monthly telephone bills,' in an amount to be determined by the board, but not to exceed 25 cents. This surcharge would be payable by each consumer of telephone services. Sec. 82.006. The telephone utility is required to transfer to the board the funds collected pursuant to the surcharge. The board is then empowered to `award the purchase contract [for the telecommunications devices] to the bidder who conforms closest to the specifications required.' The State Purchasing and General Services Act, article 601b, V.T.C.S., does not apply to the purchase of the telecommunications devices, but the board must use a `substantially equivalent' bidding procedure. Section 82.008.
You inquire whether House Bill No. 1002 is constitutional. Article III, section 51, of the Texas Constitution provides:
Sec. 51. Grants of public money prohibited; exceptions.
The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever; provided, however, the Legislature may grant aid to indigent and disabled Confederate soldiers and sailors under such regulations and limitations as may be deemed by the Legislature as expedient, and to their widows in indigent circumstances under such regulations and limitations as may be deemed by the Legislature as expedient; provided that the provisions of the Section shall not be construed so as to prevent the grant of aid in cases of public calamity.
Article XVI, section 6, of the Texas Constitution provides:
 Appropriations for private purposes; state participation in programs financed with private or federal funds for rehabilitation of blind, crippled, physically or mentally Handicapped Persons.
 (a) No appropriation for private or individual purposes shall be made, unless authorized by this Constitution. A regular statement, under oath, and an account of the receipts and expenditures of all public money shall be published annually, in such manner as shall be prescribed by law.
 (b) State agencies charged with the responsibility of providing services to those who are blind, crippled, or otherwise physically or mentally handicapped may accept money from private or federal sources, designated by the private or federal source as money to be used in and establishing and equipping facilities for assisting those who are blind, crippled, or otherwise physically or mentally handicapped in becoming gainfully employed, in rehabilitating and restoring the handicapped, and in providing other services determined by the state agency to be essential for the better care and treatment of the handicapped. Money accepted under this subsection is state money. State agencies may spend money accepted under this subsection, and no other money, for specific programs and projects to be conducted by local level or other private nonsectarian associations, groups, and nonprofit organizations, in establishing and equipping facilities for assisting those who are blind, crippled, or otherwise physically or mentally handicapped in becoming gainfully employed, in rehabilitating and restoring the handicapped, and in providing other services determined by the state agency to be essential for the better care or treatment of the handicapped.
The state agencies may deposit money accepted under this subsection either in the state treasury or in other secure depositories. The money may not be expended for any purpose other than the purpose for which it was given. Notwithstanding any other provision of this Constitution, the state agencies may expend money accepted under this subsection without the necessity of an appropriation, unless the Legislature, by law, requires that the money be expended only on appropriation. The Legislature may prohibit state agencies from accepting money under this subsection or may regulate the amount of money accepted, the way the acceptance and expenditure of the money is administered, and the purposes for which the state agencies may expend the money. Money accepted under this subsection for a purpose prohibited by the Legislature shall be returned to the entity that gave the money.
This subsection does not prohibit state agencies authorized to render services to the handicapped from contracting with privately-owned or local facilities for necessary and essential services, subject to such conditions, standards, and procedures as may be prescribed by law.
In Attorney General Opinion MW-22 (1979), this office said that a program to provide assistance of payment of utility costs for needy aged individuals was violative of article III, section 51, and article XVI, section 6, of the Texas Constitution. The opinion declared:
 Although the prohibitions of article III, section 51 and article XVI, section 6 are not applicable if the governmental expenditure is made for a proper public purpose, see State v. City of Austin, 331 S.W.2d 737 (Tex. 1960), we do not believe that Senate Bill No. 628 may be so characterized. This office has on numerous occasions held that similar direct grants on behalf of individuals, paid solely out of state funds, do not serve a proper public purpose. See, e.g., Attorney General Opinion Nos. H-602 (1975) (school district may not purchase personal injury protection or uninsured motorist coverage); H-520 (1975) (county may not contribute public funds to the construction of a facility to be used and operated by a private corporation); C-523 (1965) (state university may not pay on honorarium to an individual making a commencement address); V-809 (1949) (public funds may not be expended on behalf of victims of spastic or epileptic fits); O-2578 (1940) (public welfare grants without regard to categories enumerated under article III, section 51-a are invalid). It is therefore our opinion that Senate Bill No. 628 is invalid under article III, section 51 and article XVI, section 6
of the Texas Constitution.
The opinion noted also that article III, section 51-a, of the constitution:
 permits certain assistance programs when federal matching funds are available. If appropriate federal legislation were enacted, a program of the type you suggest could be implemented by the State of Texas. Otherwise, a constitutional amendment would be required.
We believe that this reasoning is equally applicable to the program which House Bill No. 1002 proposes to establish, in that it constitutes a direct grant of valuable property to needy individuals, paid solely out of funds collected in the name, and for the use of, the state. In our opinion, such a program clearly contravenes article III, section 51, and article XVI, section 6, of the Texas Constitution. In view of this determination, we need not address your other questions.
 SUMMARY
House Bill No. 1002, which proposes to provide telecommunications devices for the deaf, hearing impaired, and speech impaired, to be financed by a surcharge on telephone bills, is violative of article III, section 51, and article XVI, section 6, of the Texas Constitution.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Tom Green First Assistant Attorney General
 David R. Richards Executive Assistant Attorney General
 Prepared by Rick Gilpin Assistant Attorney General