

# The Attorney General of Texas

October 8, 1980

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Homer A. Foerster
Executive Director
State Purchasing & General
   Services Commission
L.B.J. Building
Austin, Texas   78711

Opinion No. MW-251

Re: Whether the state can pay notary license fees of its employees

Dear Mr. Foerster:

You have asked whether the State Purchasing and General Services Commission may spend appropriated funds to pay the notary license fees of its employees when it determines that their services as notaries public are needed by the commission in the exercise of its statutory duties.

The answer to your question depends on (1) the existence of general legislation authorizing you to use notary services and (2) an appropriation for that purpose. Tex. Const. art. III, §44; art. VIII, §6. See Attorney General Opinion H-289 (1974). In addition, a threshold question must be addressed: whether the legislature may constitutionally authorize a state agency to spend public funds for notary license fees for its employees. Attorney General Opinion O-6637 (1945) held that state agencies could not constitutionally pay the bonding fee for a notary in its employ. The notary whose bonding fee was paid by the state could provide notary services outside of his state employment and receive the statutory fees for them. He would thus incur a private benefit at public expense, which Attorney General Opinion O-6637 found to violate the following language of article III, section 51 of the Texas Constitution:

> The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual. . . .

See also Attorney General Opinion O-5382 (1943) (art. III, §52 of constitution prohibits county from paying costs of qualifying county employees as notaries public).

Judicial interpretations of article III, section 51 and similar constitutional provisions since Attorney General Opinion O-6637 cause us to reexamine its conclusion. In Barrington v. Cokinos, 338 S.W. 2d 133 (Tex.

1960), the Supreme Court stated that an expenditure for the direct accomplishment of a legitimate public purpose is not rendered unlawful by the fact that a privately owned business may be benefitted thereby. It upheld the use of public funds for moving a railroad right-of-way to eliminate grade crossings. See also State v. City of Austin, 331 S.W. 2d 737 (Tex. 1960) (upholding relocation of private utilities necessary for highway improvements); Davis v. City of Lubbock, 326 S.W. 2d 699 (Tex. 1959) (slum clearance of lands to be developed by private ownership); Attorney General Opinion H-403 (1974).

Brazoria County v. Perry, 537 S.W. 2d 89 (Tex. Civ. App. - Houston [1st Dist.] 1976, no writ) dealt with article III, section 52 which prohibits a county from lending its credit or granting public funds to an individual. A deputy sheriff employed by the county attended at public expense a training course required of peace officers for certification under article 4413 (29aa), V.T.C.S. He also received his salary as a deputy sheriff during this time. He agreed to repay the county the costs of his attendance if he left county employment before the end of two years. He in fact left his employment and went to work as a city police officer. When the county sought payment under the agreement, he attacked it as a loan of credit which would be invalid under article III, section 52. The court found the agreement valid and stated that the funds paid the deputy sheriff while attending the course represented expenditures for the direct accomplishment of a legitimate public purpose. See V.T.C.S. art. 4413 (29aa), §7(b) (state reimbursement of political subdivision for expenses incurred in attending peace officer training program).

This office has also held in numerous opinions that the state may constitutionally pay for employees to attend schools and conferences for training, where the expenditure was directly and substantially related to the performance of the state's governmental function. See, e.g., Attorney General Opinions H-133 (1973) (school trustee's expenses in attending conference); WW-638 (1959) (employee's expenses in attending the Yale Summer School of Alcohol Studies); WW-433 (1958) (payment of employee's expenses, salary and emoluments during a nine month course in hospital administration).

We believe the reasoning of these cases and opinions is applicable to the payment of an employee's notary license fees. The legislature may authorize payment of the fees, where the expenditure is directly and substantially related to the performance of the state's governmental function. In section 31.021 of the Natural Resources Code, the legislature itself determined that the General Land Office could pay the notary license fees of an employee who provides notary public services as part of his duties. The General Appropriations Act authorizes the Land Office to use appropriated funds to reimburse employees for the notary license fees and bonds.

The statute under which the State Purchasing and General Services Commission operates does not expressly authorize the payment of notary license fees for the employees you require to perform notary services. However, it is not always necessary to have express authority for an expenditure which incidentally benefits the employee while accomplishing a public service. See, e.g., Attorney General Opinions H-944

(1977) (purchase of uniforms for inspectors); H-289 (1974) (Parks and Wildlife may spend funds to feed and house employees as part of their compensation); M-1031 (1971) (Department of Health may purchase shoulder patches for persons driving public and private ambulances).

We are informed that the commission must have documents notarized primarily in connection with its invoicing and payment functions. V.T.C.S. art. 601b, §3.15.  In addition it must verify by affidavit all payroll claims and certain other accounts submitted to the comptroller and must make sworn estimates regarding deficiencies which occur in connection with contracts for state supplies.  V.T.C.S. arts. 4344, 4351, 4359.

Section 2.06 of article 601b, V.T.C.S., provides that the "executive director shall manage the affairs of the commission subject to and under the direction of the commission." He is authorized to employ a staff necessary to administer the functions of the commission. Sec. 2.06(c). We believe that the executive director, acting at the direction of the commission, has implied authority to decide that employees required to perform  notary services for the commission may be reimbursed the cost of the license fees so long as the agency will receive adequate return for its expenditure.

When an employee performs notary services for the commission, we believe his notary license fees could come from the same item which provides his compensation. The license fees are merely an additional cost of providing services required by the commission's statutory mandate.  There are various line items that might be applied to the payment of notary license fees in relation to the invoicing and payment function. For example, under the heading "Central Purchasing," there is an appropriation for "Clerical Support."  Under "Centralized Services" there is an item for "Purchase Audit and Control."  General Appropriations Act, Acts 1979, 66th Leg., ch. 843, at 2608.  If notarization is needed in connection with the services funded from these items we believe the notary fees may also be paid from these items.

## SUMMARY

The State Purchasing and General Services Commission may spend appropriated funds to pay the notary license fees of its employees who provide notary public services as part of their duties.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

Prepared by Susan Garrison
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

C. Robert Heath, Chairman
Jon Bible
Susan Garrison
Rick Gilpin
Kathy Reed