

# The Attorney General of Texas

May 5, 1983

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

.20 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Mary Polk
Chairman
Committee on Human Services
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No. JM-30

Re: Constitutionality of House Bill No. 1002 relating to a surcharge on telephone bills to pay for telecommunication devices for the deaf

Dear Representative Polk:

You have requested our opinion regarding the constitutionality of House Bill No. 1002, presently pending in the Sixty-eighth Legislature. The bill establishes a "telecommunications device placement board," section 82.003, within the Texas Commission for the Deaf, whose function it is to administer the "telecommunications device placement program. . . to provide telecommunications devices to eligible individuals." Sec. 82.002. A "telecommunications device" under the bill is:

> a device used with a basic telephone unit to provide a means by which deaf, hearing impaired, or speech impaired individuals can effectively communicate.

Sec. 82.001(6).

A deaf, hearing impaired, or speech impaired person who desires to participate in the program is required to apply to the Texas Commission for the Deaf, which is empowered to issue eligibility certificates to qualified individuals. The board is directed to distribute telecommunications devices to "telephone distribution centers used by utilities providing telephone services," section 82.009, which in turn distribute them to individuals who present eligibility certificates.

House Bill No. 1002 also establishes a "telecommunications device placement fund" as a "special fund outside the state treasury." The fund: "is created through the imposition and collection of a surcharge on monthly telephone bills," in an amount to be determined by the board, but not to exceed 25 cents. This surcharge would be payable by each consumer of telephone services. Sec. 82.006. The

telephone utility is required to transfer to the board the funds collected pursuant to the surcharge. The board is then empowered to "award the purchase contract [for the telecommunications devices] to the bidder who conforms closest to the specifications required." The State Purchasing and General Services Act, article 601b, V.T.C.S., does not apply to the purchase of the telecommunications devices, but the board must use a "substantially equivalent" bidding procedure. Section 82.008.

You inquire whether House Bill No. 1002 is constitutional. Article III, section 51, of the Texas Constitution provides:

> Sec. 51.    Grants of public money prohibited; exceptions.
>
> The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever; provided, however, the Legislature may grant aid to indigent and disabled Confederate soldiers and sailors under such regulations and limitations as may be deemed by the Legislature as expedient, and to their widows in indigent circumstances under such regulations and limitations as may be deemed by the Legislature as expedient; provided that the provisions of the Section shall not be construed so as to prevent the grant of aid in cases of public calamity.

Article XVI, section 6, of the Texas Constitution provides:

> Appropriations for private purposes; state participation in programs financed with private or federal funds for rehabilitation of blind, crippled, physically or mentally Handicapped Persons.
>
> (a)  No appropriation for private or individual purposes shall be made, unless authorized by this Constitution.  A regular statement, under oath, and an account of the receipts and expenditures of all public money shall be published annually, in such manner as shall be prescribed by law.
>
> (b)  State agencies charged with the responsibility of providing services to those who are blind, crippled, or otherwise physically or mentally handicapped may accept money from private

or federal sources, designated by the private or
federal source as money to be used in and
establishing and equipping facilities for
assisting those who are blind, crippled, or
otherwise physically or mentally handicapped in
becoming gainfully employed, in rehabilitating and
restoring the handicapped, and in providing other
services determined by the state agency to be
essential for the better care and treatment of the
handicapped. Money accepted under this subsection
is state money. State agencies may spend money
accepted under this subsection, and no other
money, for specific programs and projects to be
conducted by local level or other private
nonsectarian associations, groups, and nonprofit
organizations, in establishing and equipping
facilities for assisting those who are blind,
crippled, or otherwise physically or mentally
handicapped in becoming gainfully employed, in
rehabilitating and restoring the handicapped, and
in providing other services determined by the
state agency to be essential for the better care
or treatment of the handicapped.

The state agencies may deposit money accepted
under this subsection either in the state treasury
or in other secure depositories. The money may
not be expended for any purpose other than the
purpose for which it was given. Notwithstanding
any other provision of this Constitution, the
state agencies may expend money accepted under
this subsection without the necessity of an
appropriation, unless the Legislature, by law,
requires that the money be expended only on
appropriation. The Legislature may prohibit state
agencies from accepting money under this
subsection or may regulate the amount of money
accepted, the way the acceptance and expenditure
of the money is administered, and the purposes for
which the state agencies may expend the money.
Money accepted under this subsection for a purpose
prohibited by the Legislature shall be returned to
the entity that gave the money.

This subsection does not prohibit state
agencies authorized to render services to the
handicapped from contracting with privately-owned
or local facilities for necessary and essential

> services, subject to such conditions, standards, and procedures as may be prescribed by law.

In Attorney General Opinion MW-22 (1979), this office said that a program to provide assistance for payment of utility costs for needy aged individuals was violative of article III, section 51, and article XVI, section 6, of the Texas Constitution. The opinion declared:

> Although the prohibitions of article III, section 51 and article XVI, section 6 are not applicable if the governmental expenditure is made for a proper public purpose, see State v. City of Austin, 331 S.W.2d 737 (Tex. 1960), we do not believe that Senate Bill No. 628 may be so characterized. This office has on numerous occasions held that similar direct grants on behalf of individuals, paid solely out of state funds, do not serve a proper public purpose. See, e.g., Attorney General Opinion Nos. H-602 (1975) (school district may not purchase personal injury protection or uninsured motorist coverage); H-520 (1975) (county may not contribute public funds to the construction of a facility to be used and operated by a private corporation); C-523 (1965) (state university may not pay on honorarium to an individual making a commencement address); V-809 (1949) (public funds may not be expended on behalf of victims of spastic or epileptic fits); O-2578 (1940) (public welfare grants without regard to categories enumerated under article III, section 51-a are invalid). It is therefore our opinion that Senate Bill No. 628 is invalid under article III, section 51 and article XVI, section 6 of the Texas Constitution.

The opinion noted also that article III, section 51-a, of the constitution:

> permits certain assistance programs when federal matching funds are available. If appropriate federal legislation were enacted, a program of the type you suggest could be implemented by the State of Texas. Otherwise, a constitutional amendment would be required.

We believe that this reasoning is equally applicable to the program which House Bill No. 1002 proposes to establish, in that it constitutes a direct grant of valuable property to needy individuals, paid solely out of funds collected in the name, and for the use of,

the state.  In our opinion, such a program clearly contravenes article III, section 51, and article XVI, section 6, of the Texas Constitution.  In view of this determination, we need not address your other questions.

## S U M M A R Y

House Bill No. 1002, which proposes to provide telecommunications devices for the deaf, hearing impaired, and speech impaired, to be financed by a surcharge on telephone bills, is violative of article III, section 51, and article XVI, section 6, of the Texas Constitution.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Rick Gilpin
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
David Brooks
Rick Gilpin
Jim Moellinger
Nancy Sutton
Bruce Youngblood