Honorable Jay T. Kimbrough Bee County Attorney Courthouse Beeville, Texas 78102
Re: Whether a county commissioner may use his office to collect international aid for earthquake victims
Dear Mr. Kimbrough:
You provide us with the following facts: a county commissioner has requested that residents of the local community contribute money or canned goods to the Mexico City earthquake victims. Checks are to be made payable to the American Red Cross. The commissioner is collecting the aid at his courthouse office, using personnel paid by the county. You ask the following question:
 Is it legal for a county commissioner to use his county-funded, county courthouse office to collect international aid for earthquake victims or any other international disaster?
We agree with your conclusion that a county commissioner may not so use either county funds or county personnel for such a project; we do not, however, conclude that incidental use of space in the county courthouse violates relevant Texas constitutional provisions.
Article III, section 52 of the Texas Constitution provides the following in pertinent part:
 (a) Except as otherwise provided by this section [exceptions which are not here apposite], the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company. (Emphasis added).
Article XVI, section 6 provides in pertinent part:
 No appropriation for private or individual purposes shall be made, unless authorized by this Constitution.
Article VIII, section 3 specifies that "[t]axes shall be levied and collected by general laws and for public purposes only."
The rule was set forth in State v. City of Austin,331 S.W.2d 737, 742 (Tex. 1960):
 The purpose of this section [article III, section 51] and of Article XVI, section 6, of the Constitution is to prevent the application of public funds to private purposes; in other words, to prevent the gratuitous grant of such funds to any individual or corporation whatsoever.
We emphasize, however, that
 an expenditure for the direct accomplishment of a legitimate public and municipal purpose is not rendered unlawful by the fact that a privately owned business may be benefited thereby.
Barrington v. Cokinos, 338 S.W.2d 133, 140 (Tex. 1960).
Relying on the above-cited constitutional provisions, numerous Attorney General Opinions have disapproved attempts to divert public funds and other public resources to private persons. See, e.g., Attorney General Opinions JM-30 (1983) (state funds may not be used to provide private individuals with telecommunications devices for the deaf); MW-532 (1982) (state agency may not offer grant of state funds to private land owners for the purpose of reforesting idle lands); MW-89 (1979) (school district policy permitting teachers to work for professional associations while receiving salaries from the school district is unconstitutional);MW-36 (1979) (county may not spend public funds to purchase and mail Christmas cards); MW-22 (1979) (state funds may not be granted to private individuals to pay their utility costs).
This office has repeatedly held that public monies may not be contributed to private charitable institutions. Attorney General Opinions M-661 (1970) (county may not offer grant of public funds to private religious charitable institutions); O-7197 (1946) (county may not donate county funds to the building within that county of a privately-chartered cooperative hospital); O-5563 (1943) (county may not contribute to private charitable institutions, including homes for the elderly and homes for impoverished children); O-1001 (1939) (county may not contribute public funds to the Tuberculosis Association, to the American National Red Cross nor to any other private charitable organization). Accordingly, we conclude in this instance that the county may not expend public monies or utilize county-paid personnel for the project about which you inquire.
It is suggested that the program which you propose is authorized by article 6889-7, V.T.C.S., the Texas Disaster Act of 1975. Among the declared purposes of the act is to
 authorize and provide for coordination of activities relating to disaster prevention, preparedness, response, and recovery by agencies and officers of this state, and similar state-local, interstate, federal-state, and foreign activities in which the state and its political subdivisions may participate. (Emphasis added).
V.T.C.S. art. 6889-7, § 2(6). The act permits the governor by executive order or proclamation to declare a state of emergency. Id. § 5. The act also permits the presiding officer of a governing body of a political subdivision to declare a local state of emergency. Id. § 10. See generally Attorney General Opinions MW-140 (1980); WW-1248 (1962). We need not here determine whether the state or a political subdivision may provide assistance to citizens of a foreign country pursuant to this act because no such executive order or proclamation has been issued. While the above underscored passage from section 2 could be construed to indicate legislative intent that the state and local political subdivisions be permitted to participate in such a project, we have not found nor have you directed us to any statutory or constitutional provision specifically authorizing such participation. The act itself does not confer such authority. In any event, since the county has not taken the required steps to implement the act, the act provides no authority for the county to participate in the program about which you inquire.
We add that, while on the basis of the information which you have submitted to us, it is clear that the county may not expend public monies or utilize county-paid personnel to aid the victims of the earthquake in Mexico City, the incidental use of space in the county courthouse for such a project does not offend relevant Texas constitutional provisions. In Dodson v. Marshall,118 S.W.2d 621 (Tex.Civ.App.-Waco 1938, writ dism'd), the court held that articles 2351(7) and 1603, V.T.C.S., which repose in the commissioners court the duty to provide and keep in repair the county courthouse and jail, conferred the implied statutory power to rent space in its courthouse for a cigar and cold drink stand. The court declared:
 It does not appear that the operation of the stand in the respect contemplated will in any wise interfere with the use of the courthouse for the purposes for which it is intended. If the commissioners' court deems the letting of space in the courthouse to an individual to carry on such business the most practical method for securing such convenience, and if, by so doing, the court does not interfere with the use of the courthouse as a whole for the purposes for which it is intended, and if it appears that the court is exercising a reasonable discretion in this respect, its decisions ought not to be set aside.
118 S.W.2d at 624.
If the commissioners court, without violating the constitution, may lease space in the county courthouse to a commercial enterprise which provides a convenience to those transacting business in the courthouse, we believe the commissioners court is not prohibited from incidentally permitting the use of courthouse space as a collection point for citizens in the county to donate items for relief to victims of natural disasters. See also Tarrant County v. Rattikin Title Co., 199 S.W.2d 269
(Tex.Civ.App.-Fort Worth 1947, no writ) (county has authority to equip space within courthouse allotted to county clerk's office to enable citizens to accomplish privilege of examining records in clerk's office even if abstract company used such space at no expense in order to carry on land title business); Attorney General Opinions MW-200 (1980) (commissioners court may reasonably allocate space in county courthouse to representatives of the media, title companies, and employee credit unions if it determines that the services thereby provided serve the convenience of the public); H-920 (1977) (space may be allocated in state capitol building for news organizations); H-184 (1973) (space may be allocated in state capital building for news organizations).
Accordingly, we conclude that a county commissioner may not expend county funds or utilize county-paid personnel to collect aid for foreign victims of a natural disaster; however, incidental use of space in the county courthouse for such aid collection efforts does not violate relevant Texas constitutional provisions. Furthermore, county personnel may volunteer their time to assist in relevant collection efforts.
 SUMMARY
A county commissioner may not expend county funds or utilize county-paid personnel to collect aid for foreign victims of a natural disaster; however, incidental use of space in the county courthouse for such aid collection efforts does not violate relevant Texas constitutional provisions.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Jack Hightower First Assistant Attorney General
 Mary Keller Executive Assistant Attorney General
 Robert Gray Special Assistant Attorney General
 Rick Gilpin Chairman, Opinion Committee
 Prepared by Jim Moellinger Assistant Attorney General