

# The Attorney General of Texas

February 21, 1986

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Jay T. Kimbrough
Bee County Attorney
Courthouse
Beeville, Texas 78102

Opinion No. JM-431

Re: Whether a county commissio
may use his office to collect int
national aid for earthquake victi

Dear Mr. Kimbrough:

You provide us with the following facts: a county commissio
has requested that residents of the local community contribute mo
or canned goods to the Mexico City earthquake victims. Checks are
be made payable to the American Red Cross. The commissioner
collecting the aid at his courthouse office, using personnel paid
the county. You ask the following question:

> Is it legal for a county commissioner to use
> his county-funded, county courthouse office to
> collect international aid for earthquake victims
> or any other international disaster?

We agree with your conclusion that a county commissioner may not
use either county funds or county personnel for such a project; we
not, however, conclude that incidental use of space in the cou
courthouse violates relevant Texas constitutional provisions.

Article III, section 52 of the Texas Constitution provides
following in pertinent part:

> (a) Except as otherwise provided by this section
> [exceptions which are not here apposite], <u>the
> Legislature shall have no power to authorize any
> county, city, town or other political corporation
> or subdivision of the State to lend its credit or
> to grant public money or thing of value in aid of,
> or to any individual, association or corporation
> whatsoever,</u> or to become a stockholder in such
> corporation, association or company. (Emphasis
> added).

Article XVI, section 6 provides in pertinent part:

> No appropriation for private or individual purposes shall be made, unless authorized by this Constitution.

Article VIII, section 3 specifies that "[t]axes shall be levied and collected by general laws and for public purposes only."

The rule was set forth in State v. City of Austin, 331 S.W.2d 737, 742 (Tex. 1960):

> The purpose of this section [article III, section 51] and of Article XVI, section 6, of the Constitution is to prevent the application of public funds to private purposes; in other words, to prevent the gratuitous grant of such funds to any individual or corporation whatsoever.

We emphasize, however, that:

> an expenditure for the direct accomplishment of a legitimate public and municipal purpose is not rendered unlawful by the fact that a privately owned business may be benefited thereby.

Barrington v. Cokinos, 338 S.W.2d 133, 140 (Tex. 1960).

Relying on the above-cited constitutional provisions, numerous Attorney General Opinions have disapproved attempts to divert public funds and other public resources to private persons. See, e.g., Attorney General Opinions JM-30 (1983) (state funds may not be used to provide private individuals with telecommunications devices for the deaf); MW-532 (1982) (state agency may not offer grant of state funds to private land owners for the purpose of reforesting idle lands); MW-89 (1979) (school district policy permitting teachers to work for professional associations while receiving salaries from the school district is unconstitutional); MW-36 (1979) (county may not spend public funds to purchase and mail Christmas cards); MW-22 (1979) (state funds may not be granted to private individuals to pay their utility costs).

This office has repeatedly held that public monies may not be contributed to private charitable institutions. Attorney General Opinions M-661 (1970) (county may not offer grant of public funds to private religious charitable institutions); O-7197 (1946) (county may not donate county funds to the building within that county of a privately-chartered cooperative hospital); C-5563 (1943) (county may not contribute to private charitable institutions, including homes for the elderly and homes for impoverished children); O-1001 (1939) (county may not contribute public funds to the Tuberculosis

Association, to the American National Red Cross nor to any other private charitable organization). Accordingly, we conclude in this instance that the county may not expend public monies or utilize county-paid personnel for the project about which you inquire.

It is suggested that the program which you propose is authorized by article 6889-7, V.T.C.S., the Texas Disaster Act of 1975. Among the declared purposes of the act is to

> authorize and provide for coordination of activities relating to disaster prevention, preparedness, response, and recovery by agencies and officers of this state, and similar state-local, interstate, federal-state, and <u>foreign activities in which the state and its political subdivisions may participate</u>. (Emphasis added).

V.T.C.S. art. 6889-7, §2(6). The act permits the governor by executive order or proclamation to declare a state of emergency. <u>Id.</u> §5. The act also permits the presiding officer of a governing body of a political subdivision to declare a local state of emergency. <u>Id.</u> §10. <u>See generally</u> Attorney General Opinions MW-140 (1980); WW-1248 (1962). We need not here determine whether the state or a political subdivision may provide assistance to citizens of a foreign country pursuant to this act because no such executive order or proclamation has been issued. While the above underscored passage from section 2 could be construed to indicate legislative intent that the state and local political subdivisions be permitted to participate in such a project, we have not found nor have you directed us to any statutory or constitutional provision specifically authorizing such participation. The act itself does not confer such authority. In any event, since the county has not taken the required steps to implement the act, the act provides no authority for the county to participate in the program about which you inquire.

We add that, while on the basis of the information which you have submitted to us, it is clear that the county may not expend public monies or utilize county-paid personnel to aid the victims of the earthquake in Mexico City, the incidental use of space in the county courthouse for such a project does not offend relevant Texas constitutional provisions. In <u>Dodson v. Marshall</u>, 118 S.W.2d 621 (Tex. Civ. App. - Waco 1938, writ dism'd), the court held that articles 2351(7) and 1603, V.T.C.S., which repose in the commissioners court the duty to provide and keep in repair the county courthouse and jail, conferred the implied statutory power to rent space in its courthouse for a cigar and cold drink stand. The court declared:

> It does not appear that the operation of the stand in the respect contemplated will in any wise

> interfere with the use of the courthouse for the
> purposes for which it is intended. If the commis-
> sioners' court deems the letting of space in the
> courthouse to an individual to carry on such
> business the most practical method for securing
> such convenience, and if, by so doing, the court
> does not interfere with the use of the courthouse
> as a whole for the purposes for which it is
> intended, and if it appears that the court is
> exercising a reasonable discretion in this
> respect, its decisions ought not to be set aside.

118 S.W.2d at 624.

If the commissioners court, without violating the constitution,
may lease space in the county courthouse to a commercial enterprise
which provides a convenience to those transacting business in the
courthouse, we believe the commissioners court is not prohibited from
incidentally permitting the use of courthouse space as a collection
point for citizens in the county to donate items for relief to victims
of natural disasters. See also Tarrant County v. Rattikin Title Co.,
199 S.W.2d 269 (Tex. Civ. App. - Fort Worth 1947, no writ) (county has
authority to equip space within courthouse allotted to county clerk's
office to enable citizens to accomplish privilege of examining records
in clerk's office even if abstract company used such space at no
expense in order to carry on land title business); Attorney General
Opinions MW-200 (1980) (commissioners court may reasonably allocate
space in county courthouse to representatives of the media, title
companies, and employee credit unions if it determines that the
services thereby provided serve the convenience of the public); H-920
(1977) (space may be allocated in state capitol building for news
organizations); H-184 (1973) (space may be allocated in state capital
building for news organizations).

Accordingly, we conclude that a county commissioner may not
expend county funds or utilize county-paid personnel to collect aid
for foreign victims of a natural disaster; however, incidental use of
space in the county courthouse for such aid collection efforts does
not violate relevant Texas constitutional provisions. Furthermore,
county personnel may volunteer their time to assist in relevant
collection efforts.

### S U M M A R Y

A county commissioner may not expend county
funds or utilize county-paid personnel to collect
aid for foreign victims of a natural disaster;
however, incidental use of space in the county

courthouse for such aid collection efforts does
not violate relevant Texas constitutional pro-
visions.

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General