

# THE ATTORNEY GENERAL
## OF TEXAS

March 23, 1989

JIM MATTOX
ATTORNEY GENERAL

Mr. Dennis R. Jones
Commissioner
Texas Department of Mental
  Health and Mental Retardation
P. O. Box 12668
Austin, Texas    78711-2668

Opinion No.  JM-1030

Re: Authority of the Texas Department of Mental Health and Mental Retardation to transfer funds for start-up costs to a private entity that contracts to provide community-based services to clients of the department, and related questions (RQ-1582)

Dear Mr. Jones:

You ask identical questions regarding the authority of the Texas Department of Mental Health and Mental Retardation [the Department] and mental health/mental retardation community centers. We have combined your four questions into two for the purposes of this opinion.

> Do the Texas Department of Mental Health and Mental Retardation (TDMHMR) and mental health/mental retardation community centers established pursuant to article 5547-203, V.T.C.S. (community centers), have the authority to pay 'start up costs' to a non-governmental entity which has contracted to provide community-based services to mentally disabled clients of the department?

> If the answer to the first question is affirmative, and if the funds were expended by the non-governmental entity for the purpose of which they were paid, must the 'start up costs' be repaid to the department or the community center? In responding to this question, please consider the possibility that such funds could be used to purchase or improve real property, or to purchase furniture, appliances and other nonconsumable items.

We have combined your questions because the considerations are the same: both the Department and community centers established pursuant to article 5547-203, V.T.C.S., are agencies of the state. <u>See generally</u> V.T.C.S. art. 5547-201; V.T.C.S. art. 5547-203, § 3.01(c). <u>See also</u> Attorney General Opinions M-1266 (1972); C-584 (1966).

In your letter you explain that the anticipated start-up costs may be as follows:

> a.   purchase or lease of space in which to provide services;

> b.   renovation of such space as necessary;

> c.   payment of utilities for such space;

> d.   purchase or lease of personal property such as furniture, appliances, vehicles, adaptive equipment, training materials and sheltered workshop equipment;

> e.   salaries, fringe benefits, travel and per diem costs of employees during the period of training necessary prior to initial service contact with the disabled persons; and

> f.   other costs associated with the preparation to provide services.

The Mental Health and Retardation Act enables both the Department and community centers to contract with private parties. The Department is authorized under article 5547-202, section 2.13, V.T.C.S., to "cooperate, negotiate and contract with local agencies, hospitals, <u>private organizations and foundations</u>, community centers, <u>physicians and persons</u> to plan, develop and provide community-based mental health and mental retardation services." (Emphasis added.) Community centers are similarly authorized under article 5547-203, section 3.12(a), V.T.C.S., to "make contracts with local agencies and with <u>qualified persons and organizations</u> to provide portions of these services." (Emphasis added.)

You express concern that advance payment of start-up costs to a non-governmental entity might contravene sections 50 and 51 of article III of the Texas Constitution. Those sections prohibit the grant of public credit (section 50) and public monies (section 51) to private individuals or entities. The Texas Supreme Court has declared that the

purpose of these and similar constitutional provisions is to "prevent the application of public funds to private purposes; in other words, to prevent the gratuitous grant of such funds to any individual or corporation whatsoever." See, e.g., State v. City of Austin, 331 S.W.2d 737, 742 (Tex. 1960). The Supreme Court has also said "an expenditure for the direct accomplishment of a legitimate public and municipal purpose is not rendered unlawful by the fact that a privately owned business may be benefited thereby." Barrington v. Cokinos, 338 S.W.2d 133, 140 (Tex. 1960).

This office has issued a number of opinions approving the advance payment of public funds to private parties for the achievement of a public purpose. See, e.g., Attorney General Opinions MW-423 (1982) (grant to private museum honoring firefighters); H-1010 (1977) (payment of medical tuition as partial compensation for promise that student will practice medicine in county); H-74 (1973) (prepayment of state employees' authorized travel expenses); V-1067 (1950) (advance payment by the state of annual rent on business machines).

This office has also issued several opinions granting limited approval of the expenditure of public funds for the improvement of realty owned by private parties. Attorney General Opinions JM-551 (1986) (Southwest Texas State University may expend state funds on permanent improvements on property held in trust); MW-514 (1982) (Texas Technical University may expend public funds for permanent improvements on property owned but subject to reverter); H-403 (1974) (Department of Agriculture may expend public funds to erect, repair or maintain improvements on leased property); M-512 (1969) (Department of Public Welfare may expend funds to refurbish a leased building).

The constitutional provisions were exhaustively examined in the opinions cited above, and we need not reiterate the logic that allows payment of public funds to private entities. It is sufficient here to restate the principle that the constitutional provisions are not violated when public funds are expended for the achievement of a public purpose, when the public receives adequate consideration in return, and when the governmental body retains control over the use of the funds to ensure that the public purpose is achieved. See generally Wilatt, Constitutional Restrictions on Use of Public Money and Public Credit, 38 Tex. Bar J. 413 (1975); see also Attorney General Opinions JM-551 (1986); MW-373 (1981).

Generally, the determination of whether a particular expenditure of public funds meets those constitutional requirements is left, at least in the first instance, within the sound discretion of the governing body that proposes to pay public funds to a private entity. See, e.g., Dodson v. Marshall, 118 S.W.2d 621 (Tex. App. - Waco 1938, writ dism'd); Attorney General Opinions JM-551 (1986); MW-423 (1982); MW-373 (1981); H-1260 (1978); H-403 (1974).

We believe that the legislature has identified the community placement and treatment of mentally disabled individuals as a public purpose through its statement of public policy in several sections of the Mental Health and Mental Retardation Act. Section 1.01(c) of article 5547-201, V.T.C.S., states in part "[i]t is the policy of this state that when appropriate and feasible, mentally ill and mentally retarded persons shall be afforded treatment in their own communities," and subdivision (d) of that section states "[t]he public policy of this state is that mental health and mental retardation services be the responsibility of local agencies and organizations to the greatest extent possible."

The second question, regarding repayment of advanced funds, is directly related to the constitutional requirements of consideration and control. As noted above, the determination of whether or not a transaction fulfills those constitutional requirements is, in the first instance, within the discretion of the governing body of the political subdivision or agency.

While we believe that the constitution does not require total repayment, it does require a quid pro quo. While that can be accomplished by total repayment, it can also be accomplished by contractually guaranteed service for a certain period of time coupled with forgiveness of a portion of the amount advanced. See, e.g., Attorney General Opinions MW-423 (1982) (Historical Commission could grant funds to private museums, if museum is contractually required to serve the public for a certain period of time); H-1010 (1977) (county could advance medical tuition on condition that student would act as county health officer, with forgiveness of part of tuition payment after a certain period of service). As noted in Attorney General Opinion MW-423 (1982), the period of service required to assure that the public receives adequate consideration is within the discretion of the governing body.

You have not provided us with a proposed contract, and we decline to speculate about possible contractual

provisions.  We must leave it  within the discretion of  the Commissioner of Mental Health and Mental Retardation and the board of trustees of a  community center to assure that  the constitutional requirements of consideration and control are met.  Of course, all transactions are subject to  applicable statutes and departmental rules.

### S U M M A R Y

The Texas  Department of  Mental  Health and Mental  Retardation  and  mental  health/ mental  retardation community  centers  may contract with private parties to plan and  to provide  for  community-based  services  to mentally disabled clients.  Both the  Department and community centers may pay  "start-up costs" to non-governmental parties,  provided that the public receives adequate  consideration and the governmental body retains enough control over the expenditure of the funds  to assure that the public purpose of  community-based  mental  health/mental  retardation services is actually fulfilled.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Karen C. Gladney
Assistant Attorney General